# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

ANIL KANCHARLA; ANILA
SEELAMGARI; APARNA KADARI;
CHAKRAPANI PASUPULEETI;
DEEPIKA BOOJALA; GEETHA
CHAPPALI; HAREESH GAVINI;
JAYAKRISHNA GORANTLA; KRISHNA
COLLURU; LAKSHMANA REKHA
OBHILINENI; LAXMI NUGOORU;
MADHAVA ANUGU; MADHUSDHAN
GORANTLA; NIBU PAUL; NIRMALA
BATTINAPATLA; PRAJEESH
NADOOLI; PRASANNA KUMAR
PENUMALA; PRITHVIDER JAVAJI;
PUSHPA KONAKALA; RAGHU B
KAMAROUTHU; RAJANI PADURU;
RAMESH NAIDU DASYAM; RAVI
MIDDA; RAVINDRANATH
MANGALAGIRI; SACHIN BEHL;
SANJEEV K CHANDA; SATEESH
CHINTA; SMRUTHI PURELLI;
SREENIVASULU UPPARI PASHANAM;
SRINIVASA PENDURTHI; SUNEEL
KANCHARLA; SURESH ADUSUMILLI;
SURESH PALADUGU; UMA KARNATI;
UMAMAHESWARARAO
NIZAMPATNAM; VANI AMBATI
DAMODARAM; VARALAKSHMI
ADIPUDI; VENKATA CHINTA;
VENKATA MALLIPEDDI;
VENKATESWARA CHITTEPU; and
VINAY GUNDALA,

        Plaintiffs,

    v.

UNITED STATES OF AMERICA; and
THE FEDERAL NATIONAL
MORTGAGE ASSOCIATION

        Defendants.

Civil Case No.: 1:25-cv-01540-PTG-WBP

**DEFENDANT THE FEDERAL
NATIONAL MORTGAGE
ASSOCIATION'S OPENING BRIEF IN
SUPPORT OF MOTION TO DISMISS
COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND AND RELEVANT ALLEGATIONS............................................. 2

LEGAL STANDARD................................................................................................. 5

ARGUMENT .............................................................................................................. 5

    I.      Fannie Mae Is Not Liable for FHFA Director Pulte's Statements......................... 5

    II.     Plaintiffs Fail To Allege a Statement "Of Or Concerning" Any Plaintiff ............. 7

    III.    Plaintiffs Fail To Plead That Defendants Acted With Malice, as Virginia's Anti-SLAPP Statute Requires ............................................................................. 10

        A.     Plaintiffs must plausibly plead actual malice........................................... 10

        B.     Plaintiffs' failure to plead actual malice in the Complaint warrants dismissal.................................................................................................... 11

    IV.    Plaintiffs Cannot State a Claim for Punitive Damages Against Fannie Mae ...... 12

CONCLUSION......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1209 Vill. Walk Tr., LLC v. Broussard,*
2019 WL 452728 (D. Nev. Feb. 4, 2019) ................................................................. 14

*Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC,*
821 F. App'x 234 (4th Cir. 2020) ........................................................................... 11

*Alam v. Fannie Mae,*
No. 02-cv-04478 (S.D. Tex. Sept. 29, 2005) .......................................................... 12

*Alexis v. Kamras,*
2020 WL 7090120 (E.D. Va. Dec. 3, 2020) ........................................................... 11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................... 5, 12

*Auckland v. Gilead Scis., Inc.,*
2025 WL 314029 (W.D. Va. Jan. 28, 2025) ........................................................... 11

*Banneck v. Fed. Nat'l Mortg. Ass'n,*
2018 WL 2287656 (N.D. Cal. May 18, 2018) ........................................................ 14

*Banneck v. Fed. Nat'l Mortg. Ass'n,*
No. 17-cv-04657 (N.D. Cal. Dec. 13, 2017) .......................................................... 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................. 5

*Burke v. Fed. Nat'l Mortg. Ass'n,*
221 F. Supp. 3d 707 (E.D. Va. 2016), *vacated* 2016 WL 7451624 (E.D. Va. Dec. 6, 2016) ... 14

*Carey v. Throwe,*
957 F.3d 468 (4th Cir. 2020) ................................................................................. 11

*Cassese v. Washington Mut., Inc.,*
711 F. Supp. 2d 261 (E.D.N.Y. 2010) ................................................................... 14

*Collins v. Yellen,*
594 U.S. 220 (2021) ................................................................................................. 7

*Daly v. FDIC,*
2024 WL 4219728 (N.D. Cal. Sept. 17, 2024) ....................................................... 14

*Deerborne Cottages, LLC v. First Bank,*
2012 WL 1835240 (W.D.N.C. Apr. 9, 2012), *report and recommendation adopted*, 2012
WL 1836093 (W.D.N.C. May 21, 2012) ................................................................ 14

*Denton v. Nationstar Mortg. LLC,*
2020 WL 1917486 (N.D. Okla. Apr. 20, 2020) ................................................ 13, 14

*Doe v. Am. Nat'l Red Cross,*
837 F. Supp. 121 (E.D.N.C. 1992) ........................................................................ 12

*Fairfax v. CBS Broad. Inc.*,
534 F. Supp. 3d 581 (E.D. Va. 2020), *aff'd sub nom.* 2 F.4th 286 (4th Cir. 2021) .................. 11

*Fed. Hous. Fin. Agency v. City of Chicago*,
962 F. Supp. 2d 1044 (N.D. Ill. 2013) ................................................................................. 13

*Fuste v. Riverside Healthcare Ass'n, Inc.*,
575 S.E.2d 858 (Va. 2003) ................................................................................................... 8

*Garnett v. Remedi Seniorcare of Va., LLC*,
892 F.3d 140 (4th Cir. 2018) ............................................................................................... 6

*Gazette, Inc. v. Harris*,
325 S.E.2d 713 (Va. 1985) ............................................................................................... 2, 7

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ........................................................................................................... 14

*Gray v. Seterus, Inc.*,
233 F. Supp. 3d 865 (D. Or. 2017) ............................................................................... 13, 14

*Hanks v. Wavy Broadcasting, LLC*,
2012 WL 405065 (E.D. Va. Feb. 8, 2012) ........................................................................ 8, 9

*Harless v. Nicely*,
900 S.E.2d 503 (Va. Ct. App. 2024) .................................................................................. 12

*In re Sparkman*,
703 F.2d 1097 (9th Cir. 1983) ........................................................................................... 12

*Jordan v. Kollman*,
612 S.E.2d 203 (Va. 2005) ................................................................................................. 12

*Kashdan v. George Mason Univ.*,
70 F.4th 694 (4th Cir. 2023) ................................................................................................ 5

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) ............................................................................................... 5

*Liverman v. City of Petersburg*,
844 F.3d 400 (4th Cir. 2016) ............................................................................................. 11

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
674 F.3d 369 (4th Cir. 2012) ............................................................................................. 11

*Meyer v. Holley*,
537 U.S. 280 (2003) ............................................................................................................. 6

*Monrad v. FDIC*,
62 F.3d 1169 (9th Cir. 1995) ............................................................................................. 14

*Mwangi v. Fed. Nat'l Mortg. Ass'n*,
2015 WL 12434327 (M.D. Ga. Mar. 9, 2015) ............................................................... 13, 14

*Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n,*
 2019 WL 3779531 (N.D. Cal. Aug. 12, 2019) ........................ 13

*Nevada ex rel. Hager v. Countrywide Home Loans Servicing, LP,*
 812 F. Supp. 2d 1211 (D. Nev. 2011) ................................ 13

*Nguyen v. FDIC for First Nat'l Bank,*
 2018 WL 4293140 (E.D. Tex. Aug. 15, 2018) ........................ 14

*Nigro v. Va. Commw. Univ./Med. Coll. of Va.,*
 492 F. App'x 347 (4th Cir. 2012) ................................... 7

*Paley v. Fed. Home Loan Mortg. Corp.,*
 1994 WL 327659 (E.D. Pa. July 7, 1994) ........................... 12

*Parker v. Carilion Clinic,*
 819 S.E.2d 809 (Va. 2018) ......................................... 7

*Rolofson v. Fraser,*
 904 S.E.2d 284 (Va. 2024) ........................................ 11

*Scheduled Airlines Traffic Offices, Inc. v. Objective Inc.,*
 180 F.3d 583 (4th Cir. 1999) .................................... 9, 10

*Wilkins v. Peninsula Motor Cars, Inc.,*
 587 S.E.2d 581 (Va. 2003) ........................................ 14

**Statutes**

12 U.S.C. § 1717(a)(2)(B) ............................................ 2

12 U.S.C. § 4511 .................................................... 3

12 U.S.C. § 4617 .................................................... 3

12 U.S.C. § 4617(b)(2)(A)(i) ........................................ 14

12 U.S.C. § 4617(b)(2)(J)(ii) ........................................ 7

12 U.S.C. § 4617(j)(1) ........................................... 3, 13

12 U.S.C. § 4617(j)(4) ......................................... 3, 13, 14

28 U.S.C. § 2679(b)(1) .............................................. 1

28 U.S.C. § 2679(h) ................................................. 7

28 U.S.C. § 2680(h) ................................................. 1

Pub. L. No. 110-289, § 1101 (2008) .................................. 3

Pub. L. No. 110-289, § 1145 (2008) .................................. 3

Va. Code Ann. § 8.01-223.2 .......................................... 2

Va. Code Ann. § 8.01-223.2(A) .................................... 10, 12

Va. Code Ann. § 8.01-223.2(B) ...................................... 10

**Other Authorities**

*Penalty*, *Black's Law Dictionary* (9th ed. 2009)............................................................ 14

**INTRODUCTION**

Plaintiffs allege they were each defamed by William Pulte—the Director of the Federal Housing Finance Agency ("FHFA")—when he noted that employees had been fired from the Federal National Mortgage Association ("Fannie Mae"),  Doc. 1-1 ("Compl.") ¶¶ 16-17, and stated that an unspecified "they" were "making donations to" Fannie Mae's internal company charity "and then getting kickbacks," Compl. ¶ 19.  The Complaint concedes that Director Pulte did not identify any person—much less any of these 41 plaintiffs—as having engaged in unethical conduct or having facilitated fraud, but nevertheless asserts that plaintiffs were defamed because plaintiffs had been terminated by Fannie Mae five days earlier.  Plaintiffs' sole claim against Fannie Mae in this lawsuit is that the purported defamatory statements by Director Pulte were made "on behalf, and in furtherance of the business interests, of Fannie Mae." Compl. ¶ 21.  Plaintiffs' allegations fail to state a cognizable cause of action several times over.

The United States of America has been substituted in place of Director Pulte pursuant to 28 U.S.C. 2679(d)(1).  Doc. 4.  The United States Attorney for the Eastern District of Virginia certified that Director Pulte was acting within the scope of his federal employment at the time of the events giving rise to plaintiffs' claims.  *See id.*  Plaintiffs cannot maintain state-law claims against the United States, 28 U.S.C. § 2679(b)(1), nor claims for "libel" or "slander" under the Federal Tort Claims Act (FTCA), *id.* § 2680(h).  Fannie Mae cannot be liable for statements made by the United States.

Putting aside the legal impossibility of holding Fannie Mae liable for the United States's actions, which is dispositive of plaintiffs' inability to maintain this action at all, plaintiffs' Complaint also fails to state a plausible claim for defamation as a matter of law.  Virginia defamation law requires a plaintiff to plead an actionable statement "of or concerning" the

plaintiff.  *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 738 (Va. 1985).[1]  But no one would have had

any reason to connect plaintiffs to the statement before plaintiffs filed this public lawsuit.

Director Pulte's three statements, which are the only basis for the claims made against Fannie

Mae in this lawsuit, did not directly refer to, and cannot be directly connected to, any of the

plaintiffs.  He did not name anyone, much less plaintiffs.  The statements simply referred

generally to a large group of unspecified employees—several times larger than the group of

plaintiffs—who engaged in unethical conduct of some sort.  Plaintiffs thus fail to allege that

these purportedly defaming statements were "of or concerning" any of the plaintiffs.  Indeed, the

only reason plaintiffs are connected to Director Pulte's statements is because plaintiffs *identified*

*themselves* as the objects of his statements.  That decision cannot be imputed to anyone else.

Finally, plaintiffs' Complaint, if it could be brought under Virginia law at all, would fail

for a further reason:  The statements were on a matter of public concern, which means that under

Virginia's anti-SLAPP law plaintiffs must plausibly plead actual malice.  *See* Va. Code Ann.

§ 8.01-223.2.  But the Complaint includes no allegations *at all* regarding intent.

Defamation requires the defendant to have made a malicious, false statement to a third

party about *the plaintiff*.  Here, plaintiffs attack statements by the United States of America that

(1) were not malicious, (2) made no reference to them, and (3) cannot be attributed to Fannie

Mae.  Their Complaint should be dismissed with prejudice.

## BACKGROUND AND RELEVANT ALLEGATIONS

Fannie Mae is a private, shareholder-owned District of Columbia corporation.  *See*

Compl. ¶ 5; 12 U.S.C. § 1717(a)(2)(B).  Congress chartered Fannie Mae in 1938 to provide a

"reliable and affordable supply" of mortgage financing in the United States.  Compl. ¶ 5.

---

[1] Unless otherwise noted, all emphasis is added and quotations are omitted.

During the 2008 financial crisis, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), pursuant to which FHFA placed Fannie Mae in conservatorship on September 6, 2008.  *See* Pub. L. No. 110-289, §§ 1101, 1145 (2008) , 122 Stat. 2654, 2661, 2734, 2761-62 (codified at 12 U.S.C. §§ 4511, 4617).  HERA provided that "in any case in which the Agency [FHFA] is acting as conservator . . . [t]he Agency shall not be liable for any amounts in the nature of penalties or fines."  *Id.* § 1145, 122 Stat. 2766-67 (codified at 12 U.S.C. § 4617(j)(1), (4)) (the "HERA Penalty Bar").  Fannie Mae remains under conservatorship today.

Plaintiffs allege that on April 3, 2025, Fannie Mae hosted an internal Microsoft Teams call for certain employees.  Compl. ¶¶ 11-12.  According to the Complaint, the 41 plaintiffs, who were all Fannie Mae employees, joined the Teams call along with "what they believe were at least 80 other people."  Compl. ¶ 12.  A member of the Fannie Mae Human Resources team allegedly informed the employees on the call that they had violated Fannie Mae's Charitable Giving program and so were being terminated "for cause."  Compl. ¶ 13.

Plaintiffs allege that five days later, FHFA and Fannie Mae issued a joint online press release that Director Pulte also published on his X account.  Compl. ¶¶ 15, 29(a).  Two statements in the release are at issue here.  Compl. ¶ 15 (the "Press Release Statements").  First, the press release was titled: "Fannie Mae Fires Over 100 Employees for Unethical Conduct, Including the Facilitation of Fraud."  Compl. ¶ 16.  As part of this joint press release, Director Pulte also stated: "Since my swearing-in, we fired over 100 employees from Fannie Mae who we caught engaging in unethical conduct, including facilitating fraud, against our great company. Anyone who commits fraud against Fannie Mae does so against the American people."  Compl. ¶ 17.

Plaintiffs allege that the day after releasing the statement, Director Pulte appeared for an interview on a cable news show. Compl. ¶ 18. In that interview, Director Pulte stated: "We also found that they were making donations to the charity and then getting kickbacks—the internal company charity." Compl. ¶ 19 (the "Cable News Statement").

Plaintiffs filed this suit in the Fairfax County Circuit Court, alleging defamation *per se* (Count I) and defamation by implication (Count II) under Virginia law. Compl. ¶¶ 27-46. They allege that the Press Release Statements and the Cable News Statement are defamatory in their entirety because Plaintiffs did not engage in "unethical conduct" or "facilitate fraud." Compl. ¶¶ 15-19, 22.

Fannie Mae removed the action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446 on September 15, 2025. Doc. 1. The next day, the United States of America filed its Notice of Substitution in place of Director Pulte and its attached Certification that Director Pulte "was acting within the scope of his federal office or employment at the time of the conduct out of which the complaint arises." Doc. 4-1. The United States of America is now represented by the United States Attorney for the Eastern District of Virginia.[2]

_____

[2] On November 3, 2025, the United States Attorney submitted a consent motion to extend the time for filing of its responsive pleading to the Complaint due to its current furlough status. Doc. 13. Many of Fannie Mae's defenses may be derivative of the United States's, and the United States's position in this matter could entirely dispose of the case as to Fannie Mae. However, plaintiffs refused to consent to any request by Fannie Mae to extend its time to file this motion to dismiss to match the briefing schedule with that of the United States. Fannie Mae respectfully submits that it is prudent for the Court to hold in abeyance any further briefing regarding this motion to dismiss until the United States has the opportunity to submit its intended motion to dismiss, and plaintiffs can then respond to both on the same schedule. This would conserve judicial resources and would allow the Court the opportunity to assess the full range of defenses applicable to this lawsuit.

**LEGAL STANDARD**

A complaint must be dismissed under Rule 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss, the court "need not accept as true 'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023). The Court also "may consider documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *id.*, as well as "documents attached to the complaint . . . 'so long as they are integral to the complaint and authentic,'" *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

**ARGUMENT**

**I.    Fannie Mae Is Not Liable for FHFA Director Pulte's Statements**

Fannie Mae is an improper defendant in this case. Plaintiffs do not allege that Fannie Mae itself made any defamatory statements. Rather, they complain about various statements by Director Pulte, and seemingly seek to draw Fannie Mae into this lawsuit under a theory of vicarious liability. But that effort fails as a matter of law. The Department of Justice represents Director Pulte as an official of the United States Government acting within the scope of his duties. Director Pulte is an officer of the United States and made the alleged statements in that capacity. Fannie Mae does not control the United States. The statements of the United States cannot be attributed to Fannie. And Fannie Mae cannot be held vicariously liable for statements for which no primary liability attaches.

Vicarious liability applies only to "principals or employers," and only for "acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S.

280, 285 (2003). A plaintiff must be able to demonstrate that the defendant "(a) bears at least partial responsibility for the [allegedly] tortious conduct" or "(b) has some ability to limit the likelihood that [the actor] would commit a tort." *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 142-44 (4th Cir. 2018) (determining in Virginia defamation case whether employee's statements "were within the scope of his employment and thus whether his employer can be held vicariously liable" by applying "scope of employment" test).

The Complaint nowhere alleges, much less contains any supporting allegations to create a plausible inference, that in making the challenged statements Director Pulte was "either (a) performing work assigned by [Fannie Mae] or (b) engaging in a course of conduct subject to [Fannie Mae's] control." *Garnett*, 892 F.3d at 144. On the contrary, plaintiffs' allegations themselves defeat any ability to plausibly plead that Director Pulte was acting as an agent or employee of Fannie Mae in the Press Release Statements and Cable News Statement. *See* Compl. ¶ 4 (alleging Pulte is Director of FHFA); Compl. ¶ 15 (alleging Pulte published "a *joint* press release *from the Federal Housing Finance Agency* and Fannie Mae and *shared a screenshot of said press release to the social media website X*" (emphases added)); Compl. ¶ 17 (alleging Pulte's statement in the press release noted the number of people fired "[s]ince my swearing-in" as Director of FHFA); Compl. ¶ 18 (alleging the Cable News Statement was made, not in the course of business, but rather in "an interview on the Fox News show 'The Ingraham Angle'"). The United States's substitution as the defendant in the case only reinforces that Director Pulte was acting in his official government capacity. *See* Doc. 4.[3] Fannie Mae cannot

---

[3] Plaintiffs cannot avoid these obstacles by asserting in conclusory terms that Director Pulte made the statements "on behalf, and in furtherance of the business interests, of Fannie Mae." Compl. ¶ 21. The Director is the head of Fannie Mae's regulator and conservator. By law, the Director is authorized to act in what he determines is "in the best interests of the regulated entity

be held liable for purported defamatory statements made by the United States government.

Moreover, Fannie Mae cannot be vicariously liable for statements for which there is no primary liability. *See, e.g.*, *Parker v. Carilion Clinic*, 819 S.E.2d 809, 817 n.3 (Va. 2018) (noting vicarious liability unavailable if no primary tort liability proved). The United States has not waived its sovereign immunity for "[a]ny claim arising out of" either "libel" or "slander." 28 U.S.C. § 2679(h). Because plaintiffs' claims cannot be maintained against the United States, they cannot be maintained against Fannie Mae.

## II.     Plaintiffs Fail To Allege a Statement "Of Or Concerning" Any Plaintiff

Putting aside the absolute bar of Fannie Mae's liability for acts of the United States, plaintiffs' claims independently must be dismissed because the Press Release Statements and Cable News Statement are not plausibly alleged to concern any individual plaintiff, or plaintiffs collectively. Virginia law requires a defamation plaintiff to allege that the defamatory statement was "of or concerning" the plaintiff. *E.g.*, *Gazette, Inc.*, 325 S.E.2d at 738. "[I]f the publication on its face does not show that it applies to the plaintiff, the publication is not actionable, unless the allegations and supporting contemporaneous facts connect the libelous words to the plaintiff." *Id.*

Plaintiffs do not, because they cannot, plausibly allege that the statements concern them. The Press Release Statements do not identify anyone at all, instead merely asserting that Fannie Mae had fired more than 100 employees for "unethical conduct, including facilitating fraud." Compl. ¶ 17; *see* Compl. ¶ 16. This language does not identify anyone.[4] Likewise, the Cable

---

or the Agency*," and in the broader public interest. *Collins v. Yellen*, 594 U.S. 220, 238 (2021) (quoting 12 U.S.C. § 4617(b)(2)(J)(ii)).

[4] Plaintiffs take issue with the term "unethical conduct" as used in the Press Release Statements. Compl. ¶ 17. But whether an employee engages in "unethical conduct" is plainly a viewpoint-dependent question which cannot form the basis of a defamation claim. *See, e.g.*, *Nigro v. Va. Commw. Univ./Med. Coll. of Va.*, 492 F. App'x 347, 356 (4th Cir. 2012) (affirming grant of

News Statement refers only to an unspecified group that was "getting kickbacks." Compl. ¶ 19. Nothing in that televised statement names any of the plaintiffs as having received kickbacks while at Fannie Mae. But even if any of the statements had suggested otherwise, there is a critical gap between plaintiffs and the statements that the Complaint does not fill. The Complaint merely recites the challenged statements and makes the conclusory assertion that plaintiffs were defamed by them. Compl. ¶¶ 15-16, 19, 29-30, 40-41. These allegations are facially insufficient to allege a statement "of or concerning" plaintiffs.

*Hanks v. Wavy Broadcasting, LLC*, 2012 WL 405065 (E.D. Va. Feb. 8, 2012), illustrates why plaintiffs' allegations are insufficient to plead that the statements were of or concerning them. In *Hanks*, a broadcast news company published statements via a television news segment and an accompanying online article relating to "unscrupulous tax preparers." *Id.* at *1. The statements did not mention the plaintiff by name, but they did refer to Reliable Tax, a corporation of which the plaintiff was president. *Id.* at *6. The plaintiff, a professional tax preparer, alleged that the statements, taken in context, defamed him. *Id.* The court disagreed, holding that the plaintiff failed the "of or concerning" test because, "even considering the inferences of the statements taken in context, no reading of the allegedly defamatory statements can demonstrate that the publication was intended to refer to Plaintiff and would be so understood by persons reading it who knew him." *Id.* at *8. The statements referred to "tax preparers as a class," and made "no direct or indirect reference to" the plaintiff. *Id.* at *8-9. The plaintiff therefore failed to plead "sufficient facts to demonstrate that the allegedly defamatory

---

motion to dismiss, holding that statements providing speaker's "perceptions of [a student's] performance" are opinions because they "cannot be proven false"); *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 860-62 (Va. 2003) (affirming judgment sustaining demurrer as to, *inter alia*, statements that plaintiff was "unprofessional" because the statements "w[ere] dependent on the speaker's viewpoint and are, therefore, expressions of opinion").

statements either directly or indirectly—through inference or by implication—refer to him." *Id.* at *9.

Likewise, in *Scheduled Airlines Traffic Offices, Inc. v. Objective Inc.*, 180 F.3d 583 (4th Cir. 1999), the defendant stated in an annual report that its internal programmers "[p]ick[ed] up where an outside firm left off" and "spent months modifying and rewriting software" for a project, *id.* at 592. The plaintiff, which was the outside firm being discussed, asserted that this statement was defamatory. *Id.* But the Fourth Circuit held that this statement could not be "of or concerning" the plaintiff firm, because the statement did not name the plaintiff firm and did not "provide any identifying details that would 'lead those who knew or knew of [the firm] to believe that the [statement] was intended to refer to'" the plaintiff firm. *Id.* at 593.

Here, as in *Hanks* and *Scheduled Airlines*, the alleged defamatory statements do not mention any plaintiff by name, and no reading of the statements could demonstrate that they were intended to refer to these 41 particular plaintiffs or would be understood to refer to these plaintiffs. As plaintiffs themselves acknowledge, the Press Release Statements refer to "over 100 employees" generally, Compl. ¶¶ 16-17, just as the statements in *Hanks* referred to "tax preparers as a class," 2012 WL 405065, at *8. The Press Release Statements consistently refer to "unethical conduct, *including*" facilitating fraud. Compl. ¶¶ 16-17. Given this repeated choice of words, the statements cannot reasonably be read to suggest that any particular person engaged in "unethical conduct" necessarily was engaged in "facilitating fraud," Compl. ¶ 17; rather, only some unnamed and un-hinted-at subset of those deemed to have engaged in unethical conduct were accused in any of these statements of having facilitated fraud. Compl. ¶¶ 16-17.

Plaintiffs are equally unable to allege that the Cable News Statement concerns them. The statement "[w]e also found that *they* were making donations to the [internal company] charity

and then getting kickbacks" lacks the requisite specificity as to identification.  Compl. ¶ 19.

Nothing in that statement or elsewhere in the Complaint provides any indication of which

particular people were "getting kickbacks," *id.*, much less shows any connection to any plaintiffs

in this lawsuit.

Because plaintiffs' Complaint neither alleges nor permits the necessary inference that the

various statements were intended to refer specifically to plaintiffs and would be so understood by

others who knew plaintiffs, they cannot establish that the statement satisfies Virginia's "of or

concerning" requirement.  *See, e.g.*, *Scheduled Airlines Traffic Offs.*, 180 F.3d at 592.  For this

independent reason, the Complaint must be dismissed.

### III.    Plaintiffs Fail To Plead That Defendants Acted With Malice, as Virginia's Anti-SLAPP Statute Requires

As explained, plaintiffs cannot maintain claims against Fannie Mae under governing

federal or state law.  But plaintiffs' claims would fail under Virginia law for a further reason in

any event.  Because the Press Release Statements and Cable News Statement are on a matter of

public concern, Virginia's anti-SLAPP law requires plaintiffs to plead and prove actual malice.

The Complaint does not come close to satisfying these standards.

#### A.    Plaintiffs must plausibly plead actual malice.

Virginia's anti-SLAPP law provides that "[a] person shall be immune from tort liability if

the tort claim is based solely on statements . . . regarding matters of public concern that would be

protected under the First Amendment to the Constitution of the United States made by that

person that are communicated to a third party."  Va. Code Ann. § 8.01-223.2(A).  This immunity

can be pierced only as to "statements that the declarant knew or should have known were false or

were made with reckless disregard for whether they were false."  *Id.* § 8.01-223.2(B).  The

statute thus "expressly incorporates" the actual malice standard for liability.  *Auckland v. Gilead*

*Scis., Inc.*, 2025 WL 314029, at *5 (W.D. Va. Jan. 28, 2025). The anti-SLAPP law requires plaintiffs to plead actual malice even if they are private figures. *See Alexis v. Kamras*, 2020 WL 7090120, at *19-20 (E.D. Va. Dec. 3, 2020).

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Carey v. Throwe*, 957 F.3d 468, 475 (4th Cir. 2020). Acts of fraud, waste, or abuse are matters of concern to any federal agency and mortgage provider, and to the greater community. It cannot be denied that the challenged statements emanate from a matter of public concern as defined under Virginia case law. *See, e.g., Liverman v. City of Petersburg*, 844 F.3d 400, 408 (4th Cir. 2016); *Rolofson v. Fraser*, 904 S.E.2d 284, 294-95 (Va. 2024).

**B.      Plaintiffs' failure to plead actual malice in the Complaint warrants dismissal.**

Plaintiffs fail to adequately plead malice. Virginia state and federal courts have readily dismissed defamation cases at the pleading stage when, as here, a plaintiff failed to plead adequate allegations of fact to support a plausible allegation of malice. *See, e.g., Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F. App'x 234, 240 (4th Cir. 2020); *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 595 (E.D. Va. 2020), *aff'd sub nom.* 2 F.4th 286 (4th Cir. 2021).

"[A]t the pleading stage, conclusory allegations and mere recitations of the actual malice standard—which is ultimately a subjective inquiry—are insufficient. Instead, a plaintiff must plead facts that, if proven, create a plausible inference of actual malice." *Fairfax*, 534 F. Supp. 3d at 592; *see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). But plaintiffs offer *no* facts to support their conclusory assertion of actual malice. Plaintiffs plead only the blanket assertion that the statements were made "with malice, as Defendants knew of [their] falsity or had a reckless indifference to whether [they were] true,

which entitles Plaintiffs to punitive damages." Compl. ¶¶ 29(c), 40(c). These allegations merely repeat the definition of actual malice, expressed as a legal conclusion followed by a case citation. *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; nor will "'naked assertion[s]' devoid of 'further factual enhancement'" in a complaint. *Iqbal*, 556 U.S. at 678.

Because plaintiffs have not plausibly pleaded malice, defendants are "immune from tort liability," if this Court were to reach this issue at all. Va. Code Ann. § 8.01-223.2(A); *Harless v. Nicely*, 900 S.E.2d 503, 511 (Va. Ct. App. 2024). And even if they had a claim that could proceed past the pleading stage, plaintiffs' claim for punitive damages must be struck. *See Jordan v. Kollman*, 612 S.E.2d 203, 207 (Va. 2005).

### IV. Plaintiffs Cannot State a Claim for Punitive Damages Against Fannie Mae

Even if Fannie Mae somehow could be held liable for damages caused by the United States, settled law bars plaintiffs from recovering punitive damages from the United States, and likewise bars plaintiffs from asserting a punitive damages claim against Fannie Mae, whether under a vicarious liability theory or otherwise.

To begin, Fannie Mae is immune from punitive damages because it is a federal instrumentality. *See, e.g.*, *In re Sparkman*, 703 F.2d 1097, 1100-01 (9th Cir. 1983) (recognizing that federal instrumentalities are immune from punitive damages); *Doe v. Am. Nat'l Red Cross*, 837 F. Supp. 121, 122 (E.D.N.C. 1992) (same, citing cases). Before conservatorship, courts had recognized that Fannie Mae qualifies as a federal instrumentality exempt from punitive damages. *See* Order on Motion to Dismiss at 25-26, *Alam v. Fannie Mae*, No. 02-cv-04478, 25–26 (S.D. Tex. Sept. 29, 2005), ECF No. 45; *Paley v. Fed. Home Loan Mortg. Corp.*, 1994 WL 327659, at *2 (E.D. Pa. July 7, 1994) (same conclusion for Freddie Mac). Fannie Mae continues to be a "federal instrumentality for purposes of punitive damages" while in conservatorship and

therefore "is exempt from an award of punitive damages." *Mwangi v. Fed. Nat'l Mortg. Ass'n*, 2015 WL 12434327, at *3 (M.D. Ga. Mar. 9, 2015).

Moreover, HERA provides that "in any case in which the Agency [FHFA] is acting as conservator . . . [t]he Agency shall not be liable for any amounts in the nature of penalties or fines." 12 U.S.C. § 4617(j)(1), (4) (the "HERA Penalty Bar"). FHFA has acted as Fannie Mae's conservator since 2008. Under this governing federal law, Fannie Mae is exempt from taxes, penalties, and fines, including the punitive damages sought by these plaintiffs. *See Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*, 2019 WL 3779531, at *6 (N.D. Cal. Aug. 12, 2019).

Courts around the country have held time and again that HERA's Penalty Bar applies to Fannie Mae. *See id; Denton v. Nationstar Mortg. LLC*, 2020 WL 1917486, at *6 (N.D. Okla. Apr. 20, 2020) ("Fannie Mae, due to its status in conservatorship, cannot be liable for any amounts in the nature of penalties or fines."); Order on Motion to Dismiss at 2, *Banneck v. Fed. Nat'l Mortg. Ass'n*, No. 17-cv-04657 (N.D. Cal. Dec. 13, 2017), ECF No. 37 (holding that "demands for amounts in the nature of penalties . . . are barred by [HERA] because [FHFA] is acting as conservator of Fannie Mae"); *Gray v. Seterus, Inc.*, 233 F. Supp. 3d 865, 872 (D. Or. 2017) (holding that Fannie Mae "is indeed immune" under the HERA Penalty Bar); *Mwangi*, 2015 WL 12434327, at *4 (holding that Fannie Mae is exempt from penalties "[i]n light of" the HERA Penalty Bar); *Fed. Hous. Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013) (holding that the HERA Penalty Bar applies to Fannie Mae because FHFA, as Conservator, stepped into Fannie Mae's shoes); *Nevada ex rel. Hager v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011) (holding that "while under

conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent" as FHFA).[5]

Under both federal and Virginia law, punitive damages are (as their name suggests) designed to punish. *See, e.g.*, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (punitive damages "are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence"); *Wilkins v. Peninsula Motor Cars, Inc.*, 587 S.E.2d 581, 584 (Va. 2003). Punitive damages are thus plainly "in the nature of penalties or fines" and cannot be imposed on Fannie Mae during conservatorship. 12 U.S.C. § 4617(j)(4); *see Penalty*, *Black's Law Dictionary* (9th ed. 2009) ("Punishment imposed on a wrongdoer, . . . esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong."). As a penalty, punitive damages are therefore precluded by the HERA Penalty Bar, as courts routinely have held.[6]

---

[5] The lone dissenting opinion from this nationwide consensus, *Burke v. Fed. Nat'l Mortg. Ass'n*, 221 F. Supp. 3d 707, 710 (E.D. Va. 2016), *vacated* 2016 WL 7451624 (E.D. Va. Dec. 6, 2016), is irrelevant, incorrect, and distinguishable. Because the *Burke* court later determined that "it was without jurisdiction to issue any prior opinion or order in this case," it vacated its earlier opinion, rendering that decision a legal nullity. 2016 WL 7451624, at *1. The decision is incorrect on the merits as well, since it adopts a mistaken reading of HERA that ignores its unambiguous statutory language providing that FHFA as conservator succeeds to Fannie Mae's assets. *See* 12 U.S.C. § 4617(b)(2)(A)(i). No other court has followed *Burke*'s improper reasoning. *See, e.g.*, *1209 Vill. Walk Tr., LLC v. Broussard*, 2019 WL 452728, at *3 (D. Nev. Feb. 4, 2019) (expressly refusing to follow "vacated" *Burke* decision as "unpersuasive").
[6] *See, e.g.*, *Denton*, 2020 WL 1917486, at *6 (barring punitive damages against Fannie Mae under HERA, agreeing with uncontested argument that such damages constitute a penalty); *Banneck v. Fed. Nat'l Mortg. Ass'n*, 2018 WL 2287656, at *3 (N.D. Cal. May 18, 2018) (noting court's prior decision to bar punitive damages against Fannie Mae under HERA); *Gray*, 233 F. Supp. 3d at 872 (holding Fannie Mae immunized from punitive damages); *Mwangi*, 2015 WL 12434327, at *4; *see also, e.g.*, *Monrad v. FDIC*, 62 F.3d 1169, 1175 (9th Cir. 1995) (holding that FIRREA preempts state-law "late payment penalties"); *Daly v. FDIC*, 2024 WL 4219728, at *12 (N.D. Cal. Sept. 17, 2024) (holding that FIRREA bars punitive damages against FDIC, and citing cases); *Nguyen v. FDIC for First Nat'l Bank*, 2018 WL 4293140, at *8 (E.D. Tex. Aug. 15, 2018) (same); *Deerborne Cottages, LLC v. First Bank*, 2012 WL 1835240, at *7 (W.D.N.C. Apr. 9, 2012) (same), *report and recommendation adopted*, 2012 WL 1836093 (W.D.N.C. May 21, 2012); *Cassese v. Washington Mut., Inc.*, 711 F. Supp. 2d 261, 273 (E.D.N.Y. 2010) (same).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: November 5, 2025

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Brian P. Quinn*

Meaghan VerGow*
mvergow@omm.com
Brian Quinn (VSB No. 90997)
bquinn@omm.com
1625 Eye Street NW, 10th Floor
Washington, D.C. 20006
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

Leah Godesky*
lgodesky@omm.com
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: +1 212 326 2000
Facsimile: +1 212 326 2061

* admitted *pro hac vice*

*Attorneys for Defendant The Federal
National Mortgage Association*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Milton C. Johns
mjohns@xlppllc.com
Executive Law Partners, LLC
11130 Fairfax Blvd., Suite 303
Fairfax, VA 22030

Dennis C. Barghaan, Jr.
dennis.barghaan@usdoj.gov
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

/s/ *Brian P. Quinn*

Brian P. Quinn (VSB No. 90997)
bquinn@omm.com
O'Melveny & Myers LLP
1625 Eye Street NW, 10th Floor
Washington, D.C. 20006
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorney for Defendant The Federal
National Mortgage Association*