UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANIL KANCHARLA; ANILA SEELAMGARI; APARNA KADARI; CHAKRAPANI PASUPULEETI; DEEPIKA BOOJALA; GEETHA CHAPPALI; HAREESH GAVINI; JAYAKRISHNA GORANTLA; KRISHNA COLLURU; LAKSHMANA REKHA OBHILINENI; LAXMI NUGOORU; MADHAVA ANUGU; MADHUSDHAN GORANTLA; NIBU PAUL; NIRMALA BATTINAPATLA; PRAJEESH NADOOLI; PRASANNA KUMAR PENUMALA; PRITHVIDER JAVAJI; PUSHPA KONAKALA; RAGHU B KAMAROUTHU; RAJANI PADURU; RAMESH NAIDU DASYAM; RAVI MIDDA; RAVINDRANATH MANGALAGIRI; SACHIN BEHL; SANJEEV K CHANDA; SATEESH CHINTA; SMRUTHI PURELLI; SREENIVASULU UPPARI PASHANAM; SRINIVASA PENDURTHI; SUNEEL KANCHARLA; SURESH ADUSUMILLI; SURESH PALADUGU; UMA KARNATI; UMAMAHESWARARAO NIZAMPATNAM; VANI AMBATI DAMODARAM; VARALAKSHMI ADIPUDI; VENKATA CHINTA; VENKATA MALLIPEDDI; VENKATESWARA CHITTEPU; and VINAY GUNDALA,<br><br>    Plaintiffs,<br><br> v.<br><br>UNITED STATES OF AMERICA; and THE FEDERAL NATIONAL MORTGAGE ASSOCIATION<br><br>    Defendants. | Civil Case No.: 1:25-cv-01540-LMB-IDD<br><br>**DEFENDANT THE FEDERAL NATIONAL MORTGAGE ASSOCIATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT** |

## TABLE OF CONTENTS

                                                           **Page(s)**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

    I.     Fannie Mae Is Not Liable For Statements Made And Published By FHFA Director Pulte In His Capacity As A Government Official ................................... 2

    II.    The Statements Were Not "Of Or Concerning" Any Plaintiff ............................. 5

    III.   Plaintiffs Fail To Plead That Fannie Mae Acted With Actual Malice ................... 7

    IV.   Punitive Damages Are Not Available Against Fannie Mae ................................. 8

    V.    Plaintiffs Do Not Satisfy The Requirements To Be Able To Amend ..................... 9

CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
 917 F.3d 206 (4th Cir. 2019) .................................................................................... 9

*Alexis v. Kamras*,
 2020 WL 7090120 (E.D. Va. Dec. 3, 2020) ............................................................... 7

*Bryant-Shannon v. Vick*,
 2025 WL 1634104 (Va. Ct. App. June 10, 2025) ...................................................... 6

*Chapin v. Knight-Ridder, Inc.*,
 993 F.2d 1087 (4th Cir. 1993) .................................................................................. 6

*Chevron U.S.A. Inc. v. Apex Oil Co.*,
 113 F. Supp. 3d 807 (D. Md. 2015) .......................................................................... 3

*Drager v. PLIVA USA, Inc.*,
 741 F.3d 470 (4th Cir. 2014) .................................................................................... 9

*Evans v. City of Lynchburg*,
 766 F. Supp. 3d 614 (W.D. Va. 2025) ....................................................................... 8

*Fuste v. Riverside Healthcare Ass'n, Inc.*,
 575 S.E.2d 858 (Va. 2003) ........................................................................................ 6

*Garnett v. Remedi Seniorcare of Va., LLC*,
 892 F.3d 140 (4th Cir. 2018) .................................................................................... 3

*Gazette, Inc. v. Harris*,
 325 S.E.2d 713 (Va. 1985) ........................................................................................ 5

*Hanks v. Wavy Broad., LLC*,
 2012 WL 405065 (E.D. Va. Feb. 8, 2012) ................................................................. 6

*Hartnett v. Hardenbergh*,
 2025 WL 299362 (E.D. Va. Jan. 24, 2025) ............................................................... 4

*In re Sparkman*,
 703 F.2d 1097 (9th Cir. 1983) .................................................................................. 8

*Jordan v. Kollman*,
 612 S.E.2d 203 (Va. 2005) ........................................................................................ 6

*Kashdan v. George Mason Univ.*,
 70 F.4th 694 (4th Cir. 2023) ..................................................................................... 4

*King v. Rubenstein*,
 825 F.3d 206 (4th Cir. 2016) .................................................................................... 4

*Lokhova v. Halper*,
 441 F. Supp. 3d 238 (E.D. Va. 2020), *aff'd*, 995 F.3d 134 (4th Cir. 2021) ............... 6

*Mirafuentes v. Estevez*,
 2015 WL 8177935 (E.D. Va. Nov. 30, 2015) ............................................................ 6

*Mwangi v. Fed. Nat'l Mortg. Ass'n*,
  2015 WL 12434327 (N.D. Ga. Mar. 9, 2015) ................................................................. 8

*Scheduled Airlines Traffic Offs., Inc. v. Objective Inc.*,
  180 F.3d 583 (4th Cir. 1999) ............................................................................... 5, 6

*Schulman v. Axis Surplus Ins. Co.*,
  90 F.4th 236 (4th Cir. 2024) ....................................................................................... 4

*Tronfeld v. Nationwide Mut. Ins. Co.*,
  636 S.E.2d 447 (Va. 2006) .......................................................................................... 6

*United States ex rel. Taylor v. Boyko*,
  39 F.4th 177 (4th Cir. 2022) ....................................................................................... 7

**Statutes**

12 U.S.C. § 4617(j)(1) .................................................................................................... 8

12 U.S.C. § 4617(j)(4) .................................................................................................... 8

28 U.S.C. § 2680(h) ....................................................................................................... 3

Va. Code Ann. § 8.01-223.2(A) ..................................................................................... 7

Va. Code Ann. § 8.01-223.2(B) ..................................................................................... 7

**Other Authorities**

Fox News, *FANNIE MAE GETS DOGED: Housing 'Boom' Is Coming, Predicts FHFA Director*, at 1:20-1:23, YouTube (Apr. 9, 2025),
  https://www.youtube.com/watch?v=FBmPGaE1MAo .............................................. 4

News Release, *Fannie Mae Fires Over 100 Employees for Unethical Conduct, Including the Facilitation of Fraud*, Fed. Hous. Fin. Agency (Apr. 8, 2025),
  https://www.fhfa.gov/news/news-release/fannie-mae-fires-over-100-employees-for-unethical-conduct-including-the-facilitation-of-fraud ...................................................... 4

## INTRODUCTION

Plaintiffs have now recognized that they cannot pursue a defamation claim against the United States Government, so they are left trying to maintain those claims against Fannie Mae. But plaintiffs cannot hold Fannie Mae liable for allegedly defamatory statements made by the Director of the Federal Housing Finance Agency, and the statements at issue are not actionable under Virginia law in the first place.

Plaintiffs' opposition brief barely disputes the pleading deficiencies identified in Fannie Mae's moving papers:

- Plaintiffs assert that Fannie Mae can be held liable for the Press Release Statements and Cable News Statement[1] because of Director William Pulte's role as Fannie Mae's chairman—but that assertion flies in the face of both the United States' undisputed certification that Director Pulte was acting in his capacity as a federal government official as well as allegations in plaintiffs' own Complaint reinforcing that Director Pulte was not speaking "on behalf of" Fannie Mae.

- Plaintiffs contend that the statements are "of or concerning" them because (a) the statements discussed unethical conduct among "employees" and (b) plaintiffs had recently been fired. That argument only confirms that plaintiffs cannot specifically connect the statements to themselves, as they must under Virginia law; as defendants showed in their opening brief, discussing a broad class of people that may include a plaintiff does not suffice to make the statement "of or concerning" that plaintiff.

---

[1] All defined terms retain their definitions from Fannie Mae's opening brief. Unless otherwise stated, all emphasis is added and quotations omitted.

- Plaintiffs' response on actual malice is similarly deficient. Their erroneous assertion that only public figures are subject to the actual malice standard ignores Virginia's anti-SLAPP statute. And plaintiffs' recitation of a series of paragraphs from their Complaint only makes the facial insufficiency of those allegations plain.

Plaintiffs cannot move forward with a defamation claim when they fail to plausibly plead necessary elements of defamation, much less to explain how Fannie Mae can be liable for the United States' speech. The Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I. Fannie Mae Is Not Liable For Statements Made And Published By FHFA Director Pulte In His Capacity As A Government Official

Director Pulte spoke as a government official in the Press Release Statements and Cable News Statement, foreclosing plaintiffs' argument that Fannie Mae is vicariously liable for his statements. The United States substituted itself in this case for Director Pulte and certified that Director Pulte made the statements in his capacity as an official of the United States Government. *See* Doc. 4-1 ("[Director Pulte] was acting within the scope of his federal office or employment at the time of the conduct out of which the complaint arises."). Plaintiffs did not dispute that certification, and instead voluntarily dismissed the United States from this action. Doc. 21. As explained in Fannie Mae's opening brief, Fannie Mae cannot be deemed vicariously liable for allegedly defamatory statements made by the United States government and its officers acting within the scope of their employment. MTD Br. 6-7.

Plaintiffs insist that because Director Pulte also serves as Chairman of Fannie Mae's Board, the Court may infer that in the at-issue statements he was speaking in that capacity on behalf of Fannie Mae. *See* MTD Opp. 1-3. But that contention cannot overcome the United States' uncontested certification that Director Pulte was speaking in his role as a federal

government official when making the at-issue statements, prompting his substitution in this action by the United States under the Westfall Act. Doc. 4-1. The United States is immune from defamation liability under the Federal Tort Claims Act (FTCA), *see* Doc. 18, at 8-10; 28 U.S.C. § 2680(h), and as the United States noted in its own motion to dismiss, "plaintiffs cannot circumvent Congress's retention of the United States' sovereign immunity by attempting to hold Fannie Mae liable in tort for statements made by the FHFA Director." Doc. 18, at 10 n.8.

The Complaint does not in any event include any allegations that permit the inference that Director Pulte was "(a) performing work assigned by [Fannie Mae] or (b) engaging in a course of conduct subject to [Fannie Mae's] control." *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 144 (4th Cir. 2018); *see* MTD Br. 6. On the contrary, plaintiffs allege that Director Pulte is the Director of the FHFA, that he published the various statements at issue here on his own on social media and via a cable news interview, and that FHFA's name was on the press release. *See* MTD Br. 6 (citing Compl. ¶¶ 4, 15, 17-18); *see Chevron U.S.A. Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 815 (D. Md. 2015) ("[W]hen a complaint contains inconsistent and self-contradictory statements, it fails to state a claim."). Ms. Almodovar's statement "thank[ing] Director Pulte" for "empowering" Fannie Mae tends to reinforce that Director Pulte was acting in his position as Director of FHFA, and certainly does not preclude that conclusion. *Contra* MTD Opp. 3. Last, Director Pulte's use of the terms "we" and "our" in his statements does nothing to indicate that Director Pulte was speaking on behalf of Fannie Mae in a non-conservatorship-related context. *Contra* MTD Opp. 2. Indeed, it makes more sense to understand "we" to refer to the agency he helms than to himself as Chairman of the Board.

Plaintiffs briefly suggest in the alternative that the Court may conclude that Fannie Mae made the defamatory statements itself because it jointly issued the press release with FHFA.

MTD Opp. 2.² But the Press Release directly attributes the at-issue statement (the "Second Statement"), a direct quote from Director Pulte, to Director Pulte. *See* Compl. ¶ 17; News Release, *Fannie Mae Fires Over 100 Employees for Unethical Conduct, Including the Facilitation of Fraud*, Fed. Hous. Fin. Agency (Apr. 8, 2025), https://www.fhfa.gov/news/news-release/fannie-mae-fires-over-100-employees-for-unethical-conduct-including-the-facilitation-of-fraud.³ And the Complaint moreover alleges that "*[t]hese Statements were made by Pulte*." Compl. ¶ 21. There is no room for a conclusion that the statement was, instead, Fannie Mae's.

Plaintiffs have pleaded themselves out of a claim against Fannie Mae several times over. The Court should dismiss the Complaint.⁴

---

² Plaintiffs presumably apply this argument only to the Press Release Statement, not the Cable News Statement. Regardless, on the cable news program, Director Pulte was introduced as the "Federal Housing Director." *See* Fox News, *FANNIE MAE GETS DOGED: Housing 'Boom' Is Coming, Predicts FHFA Director*, at 1:20-1:23, YouTube (Apr. 9, 2025), https://www.youtube.com/watch?v=FBmPGaE1MAo. Because the interview is directly referenced in the Complaint, it may be considered at the motion-to-dismiss stage. *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023) (considering materials incorporated into the complaint by reference); *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (considering materials "integral to the complaint").

³ Plaintiffs clearly intended to attach the press release to the Complaint, *see* MTD Opp. 2 (referring to it as "Exhibit 1 to the Complaint"), but it is not attached to the Complaint in this Court, *see* Doc. 1-1, so Fannie Mae cites the publicly available version of the release. The full version of the press release can also be considered on a motion to dismiss because it is plainly "integral to the complaint," *King*, 825 F.3d at 212, and is incorporated by reference, *see supra* note 2.

⁴ Plaintiffs fleetingly suggest that Fannie Mae might be considered as having "rebroadcast" Director Pulte's statements. MTD Opp. 2-3. Such a drive-by statement does not suffice to plead a new liability theory. *See Schulman v. Axis Surplus Ins. Co.*, 90 F.4th 236, 245 n.5 (4th Cir. 2024). Plaintiffs never alleged that Fannie Mae "rebroadcast" or otherwise republished Director Pulte's statements. *See* Compl. ¶ 15 ("On April 8, 2025, *Pulte published a statement* via a joint press release from the Federal Housing Finance Agency and Fannie Mae and shared a screenshot of said press release to the social media website X."). And liability attaches to someone who "republishes or reproduces a defamatory writing" only if "they do so knowing the post is false or inherently improbable." *Hartnett v. Hardenbergh*, 2025 WL 299362, at *10 (E.D. Va. Jan. 24, 2025). By failing to allege actual malice, plaintiffs fail *a fortiori* to plead that Fannie Mae *knew* the statements were false or inherently improbable. *See infra* Part III.

4

## II. The Statements Were Not "Of Or Concerning" Any Plaintiff

Plaintiffs also have failed to plead that the challenged statements were "of or concerning" any of the plaintiffs. *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 738 (Va. 1985). Neither the Press Release Statements nor the Cable News Statement named any person, much less any of the plaintiffs. *See* Compl. ¶¶ 16-17, 19. Stating that Fannie Mae fired "employees" for "unethical conduct, *including*" facilitating fraud, Compl. ¶¶ 16-17, or that an unknown group of people— "they"—were getting kickbacks, Compl. ¶ 19, does not indicate that Director Pulte was accusing any of *the plaintiffs* of facilitating fraud or getting kickbacks.

Plaintiffs argue that surrounding circumstances "connect the libelous words to the plaintiff[s]," MTD Opp. 5, because plaintiffs were among a much larger group of Fannie Mae employees who were fired, MTD Opp. 6. But as defendants explained, MTD Br. 7-10, the Press Release Statements and Cable News Statement neither named any of the plaintiffs nor "provide[d] any identifying details" that would connect his statements to the plaintiffs. *Scheduled Airlines Traffic Offs., Inc. v. Objective Inc.*, 180 F.3d 583, 593 (4th Cir. 1999). The statements simply referred to firing "employees" for "unethical conduct," Compl. ¶¶ 16-17, and referred to an unspecified "they" who had gotten kickbacks, Compl. ¶ 19. Neither the Press Release Statements nor the Cable News Statement afford any basis to conclude that *plaintiffs* (or anyone else who was part of the broader group of employees who had been terminated) were among the subset of employees who had been terminated for those particular reasons. Moreover, what constitutes "unethical conduct" is a viewpoint-dependent question, not a provably false statement, and thus cannot sustain a defamation claim at all, *see* MTD Br. 7-8 n.4; *Fuste v.*

*Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 860-62 (Va. 2003) (holding that statement about someone's "professional[ism]" is unactionable opinion).[5]

Plaintiffs nowhere grapple with the case law in defendants' opening brief—including a case plaintiffs themselves quote at length, MTD Opp. 5—which illustrates that even statements that are much more tightly connected to a plaintiff than those at issue here could not be said to be understood by those knowing the plaintiff as referring to the plaintiff. *See* MTD Br. 8-10 (discussing *Hanks v. Wavy Broad., LLC*, 2012 WL 405065, at *8-9 (E.D. Va. Feb. 8, 2012); and *Scheduled Airlines Traffic Offs.*, 180 F.3d at 593); *see also Lokhova v. Halper*, 441 F. Supp. 3d 238, 262 & n.23 (E.D. Va. 2020) (merely assuming, with some doubt, that news article was of or concerning plaintiff when it "does not name [her] and simply includes a generic reference to a 'Russian-born graduate student who regularly attended the seminars'" discussed in article, and only publications by other speakers name plaintiff), *aff'd*, 995 F.3d 134 (4th Cir. 2021). Because the Press Release Statements and Cable News Statement were not "of or concerning" plaintiffs, the Complaint may be dismissed for this independent reason. *See Mirafuentes v. Estevez*, 2015 WL 8177935, at *3 (E.D. Va. Nov. 30, 2015) ("It is proper for the Court to determine whether the statements are actionable or not at the 12(b)(6) stage.").[6]

---

[5] Plaintiffs' sole response to this is that impugning a professional or employee in their job constitutes defamation per se. *See* MTD Opp. 3-4; *see, e.g.*, *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 449-50 (Va. 2006). But this is a non-sequitur. For a statement "[t]o be actionable" under Virginia defamation law, it "must be both false *and* defamatory." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). The defamation per se doctrine does not eliminate the need to plead and eventually prove falsity. *See, e.g.*, *id.*; *Bryant-Shannon v. Vick*, 2025 WL 1634104, at *5-10 (Va. Ct. App. June 10, 2025).

[6] Plaintiffs also suggest that Fannie Mae somehow "conflate[s]" their defamation and defamation-by-implication claims. MTD Opp. 3. But they do not explain what about Fannie Mae's argument conflates the two claims. Regardless, the distinction between the two lies solely in whether a statement that is "literally true" can still be actionable because of a "defamatory implication." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993). The

### III. Plaintiffs Fail To Plead That Fannie Mae Acted With Actual Malice

Plaintiffs' defamation claims face another insurmountable problem: their failure to plead actual malice. Fannie Mae therefore is immune from liability under Virginia law. *See* MTD Br. 10-12.

Plaintiffs concede that the Press Release Statements and Cable News Statement "address[ed] matters of public concern," MTD Opp. 6, which renders "[a] person . . . immune from tort liability" under Virginia's anti-SLAPP law, Va. Code Ann. § 8.01-223.2(A). Plaintiffs nevertheless assert that only public figures must prove actual malice. MTD Opp. 6-7. But this ignores what defendants have already explained: the anti-SLAPP law applies to *both* public *and* private figures, and it requires plaintiffs to plead actual malice as to either. MTD Br. 10-11; *see Alexis v. Kamras*, 2020 WL 7090120, at *19-20 (E.D. Va. Dec. 3, 2020); Va. Code Ann. § 8.01-223.2(A)-(B) (applying actual malice standard to any "person"). So even though plaintiffs are not public figures, they must plead that Fannie Mae acted with actual malice.

Plaintiffs rattle off numerous paragraphs they claim constitute "allegations of actual malice" because they "tend[] to show that Fannie Mae made allegations of fraud and misconduct against the [plaintiffs] when Fannie Mae knew it had no evidence" of fraud. MTD Opp. 7. These allegations, however, do not plead malice. Rather, they consist of (1) conclusory recitations of the cause of action, which must be set aside, *see* Compl. ¶¶ 32, 43; *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 193 (4th Cir. 2022); (2) allegations that plaintiffs did not engage in unethical conduct, *see* Compl. ¶¶ 22-23, which would only tend to prove falsity rather than malice, *but see supra* Part II (noting that the Pulte Statements never accused plaintiffs of

---

distinction has no impact on the separate question of whether the statements made were "of or concerning" any of the plaintiffs.

unethical conduct); (3) allegations that the plaintiffs suffered harm and that accusations of unethical conduct constitute defamation per se, which likewise address separate elements of defamation unrelated to malice, *see* Compl. ¶¶ 25, 31, 42; and (4) allegations that defendants have not handed over the evidence leading to their firing—which is not evidence of malice either, because whether "*[p]laintiffs*" do or "do not have" that evidence sheds no light on whether *Fannie Mae* knowingly or recklessly made false statements, *see* Compl. ¶ 26. The sole remaining allegation—that "Defendants had no information on which to reasonably rely that any of the Plaintiffs committed unethical conduct," Compl. ¶ 24—is speculative and, again, concerns an accusation Fannie Mae did not make, *see supra* Parts I-II.

Plaintiffs provide no allegations plausibly suggesting that Fannie Mae acted with actual malice, and the Complaint must be dismissed.

## IV. Punitive Damages Are Not Available Against Fannie Mae

Even if Fannie Mae could be deemed liable despite the many insuperable obstacles already outlined, plaintiffs cannot receive punitive damages. For one thing, Fannie Mae is a federal instrumentality, *e.g.*, *Mwangi v. Fed. Nat'l Mortg. Ass'n*, 2015 WL 12434327, at *3 (N.D. Ga. Mar. 9, 2015), and federal instrumentalities are immune from punitive damages, *e.g.*, *In re Sparkman*, 703 F.2d 1097, 1100-01 (9th Cir. 1983). *See* MTD Br. 12. For another, the Housing and Economic Recovery Act of 2008 ("HERA") exempts Fannie Mae from all "amounts in the nature of penalties or fines" while in conservatorship. 12 U.S.C. § 4617(j)(1), (4) (the "HERA Penalty Bar"); *see* MTD Br. 12-14.

Plaintiffs dispute neither of these points and thus have conceded both. *See Evans v. City of Lynchburg*, 766 F. Supp. 3d 614, 618 (W.D. Va. 2025) ("Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver of the corresponding claims."). Nor could there be any doubt on either issue, given the overwhelming case law

finding both that Fannie Mae is a federal instrumentality, *see* MTD Br. 12, and that the HERA Penalty Bar applies to Fannie Mae, *see* MTD 12-14 & n.5. As a matter of governing law, punitive damages are unavailable to plaintiffs.

## V. Plaintiffs Do Not Satisfy The Requirements To Be Able To Amend

In implicit acknowledgment of the Complaint's fatal shortcomings, plaintiffs request leave to amend. MTD Opp. 7. But plaintiffs may not raise a request for leave to amend in an opposition brief. *See ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 218 (4th Cir. 2019) (holding no abuse of discretion to deny leave to amend where request not properly made in separate motion). Their request is thus procedurally improper. More fundamentally, plaintiffs identify no new facts or allegations they would add to remedy the deficiencies in the complaint. *See* MTD Opp. 7 (simply asking for leave to amend without explanation). "Without that information, there [is] no way for a district court to evaluate whether the proposed amendments were futile or not," and so there is no basis for granting amendment. *ACA Fin. Guar. Corp.*, 917 F.3d at 218. And amendment is futile in any event, since the deficiencies in the Complaint—particularly plaintiffs' inability to impose liability on Fannie Mae for the purported defamatory statements attributable to the United States—stem from the press release and televised interview, and thus cannot be cured. *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) ("A district court's denial of leave to amend is appropriate when . . . 'the amendment would have been futile.'"). The Court therefore should deny leave to amend.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

9

| Dated: December 19, 2025 | Respectfully submitted, |
|---|---|
| | **O'MELVENY & MYERS LLP** |
| | /s/ *Brian P. Quinn* |
| | Meaghan VerGow\* |
| | mvergow@omm.com |
| | Brian P. Quinn (VSB No. 90997) |
| | bquinn@omm.com |
| | 1625 Eye Street NW, 10th Floor |
| | Washington, D.C. 20006 |
| | Telephone: +1 202 383 5300 |
| | Facsimile: +1 202 383 5414 |
| | Leah Godesky\* |
| | lgodesky@omm.com |
| | 1301 Avenue of the Americas, Suite 1700 |
| | New York, NY 10019 |
| | Telephone: +1 212 326 2000 |
| | Facsimile: +1 212 326 2061 |
| | \* admitted *pro hac vice* |
| | *Attorneys for Defendant The Federal National Mortgage Association* |

**CERTIFICATE OF SERVICE**

I certify that on this 19th day of December, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email address:

Milton C. Johns
mjohns@xlppllc.com
Executive Law Partners, LLC
11130 Fairfax Blvd., Suite 303
Fairfax, VA 22030

/s/ *Brian P. Quinn*

Brian P. Quinn (VSB No. 90997)
bquinn@omm.com
O'Melveny & Myers LLP
1625 Eye Street NW, 10th Floor
Washington, D.C. 20006
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorney for Defendant The Federal National Mortgage Association*