**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Alexandria Division**

| | |
|---|---|
| ANIL KANCHARLA, | ) |
| | ) |
| ANILA SEELAMGARI, | ) |
| | ) |
| APARNA KADARI, | ) |
| | ) |
| CHAKRAPANI PASUPULEETI, | ) |
| | ) |
| DEEPIKA BOOJALA, | ) |
| | ) |
| GEETHA CHAPPALI, | ) |
| | ) |
| HAREESH GAVINI, | ) |
| | ) |
| JAYAKRISHNA GORANTLA, | ) |
| | ) |
| KRISHNA COLLURU, | ) |
| | ) |
| LAKSHMANA REKHA OBHILINENI, | ) |
| | ) |
| LAXMI NUGOORU, | ) |
| | ) |
| MADHAVA ANUGU, | ) |
| | ) |
| MADHUSDHAN GORANTLA, | ) |
| | ) |
| NIBU PAUL, | ) |
| | ) |
| NIRMALA BATTINAPATLA, | ) |
| | ) |
| PRAJEESH NADOOLI, | ) |
| | ) |
| PRASANNA KUMAR PENUMALA, | ) |
| | ) |
| PRITHVIDER JAVAJI, | ) |
| | ) |
| PUSHPA KONAKALA, | ) |
| | ) |
| RAGHU B KAMAROUTHU, | ) |
| | ) |
| RAJANI PADURU, | ) |

| | |
|---|---|
| RAMESH NAIDU DASYAM, | ) |
| | ) |
| RAVI MIDDA, | ) |
| | ) |
| RAVINDRANATH MANGALAGIRI, | ) |
| | ) |
| SACHIN BEHL, | ) |
| | ) |
| SANJEEV K CHANDA, | ) |
| | ) |
| SATEESH CHINTA, | ) |
| | ) |
| SMRUTHI PURELLI, | ) |
| | ) |
| SREENIVASULU UPPARI PASHANAM, | ) |
| | ) |
| SRINIVASA PENDURTHI, | ) |
| | ) |
| SUNEEL KANCHARLA, | ) |
| | ) |
| SURESH ADUSUMILLI, | ) |
| | ) |
| SURESH PALADUGU, | ) |
| | ) |
| UMA KARNATI, | ) |
| | ) |
| UMAMAHESWARARAO NIZAMPATNAM, | ) |
| | ) |
| VANI AMBATI DAMODARAM, | ) |
| | ) |
| VARALAKSHMI ADIPUDI, | ) |
| | ) |
| VENKATA CHINTA, | ) |
| | ) |
| VENKATA MALLIPEDDI, | ) |
| | ) |
| VENKATESWARA CHITTEPU, | ) |
| | ) |
| LAKSHMI SAINATHUNI | ) |
| | ) |
| PADMA RAO SAINATHUNI | ) |
| | ) |
| JITHENDER GOLI | ) |
| | ) |
| DIVYA CHENNAMANENI | ) |

|  |  |  |
|---|---|---|
| VENKATA PARIMI | ) | |
| | ) | |
| NAGA HIMABINDU AKULA | ) | |
| | ) | |
| LAVANYA CHAOUTACURI | ) | |
| | ) | |
| SRIMUKHI MECHINENI | ) | |
| | ) | |
| LAVANYA CHANGAL | ) | |
| | ) | |
| DEEPTHI BOLISETTY | ) | |
| | ) | |
| SATISH PRASANNA | ) | |
| | ) | |
| LEELA DOGGA | ) | |
| | ) | |
| PRAVEEN BUDDHA | ) | |
| | ) | |
| VIJAY CHAVA | ) | |
| | ) | |
| VENKATESWARLU GOPAVARAPU | ) | |
| | ) | |
| JAYA GANDIKOTA | ) | |
| | ) | |
| REVATHI NIMMAGADDA | ) | |
| | ) | |
| BHAVANI PAMALA | ) | |
| | ) | |
| SRINIVASA GAYAM | ) | |
| | ) | |
| BHAVYA CHINTALAPATI | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VINAY GUNDALA | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-cv-1540 |
| | ) | |
| WILLIAM PULTE | ) | |
| 2377 E Silver Palm Rd | ) | |
| Boca Raton, FL 33432 | ) | |
| | ) | |
| and | ) | |

3

|  |  |
|---|---|
| THE FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae") 2000 Opportunity Wy, Reston, VA 20190 | ) ) ) ) ) ) |
| *Defendants*. | ) ) |

## AMENDED COMPLAINT

Plaintiffs, listed in the following section, by counsel and for its Complaint against Defendant William Pulte and Defendant Fannie Mae, state as follows:

### NATURE OF CASE

1. This case arises out of Defendants William Pulte ("Pulte") and the Federal National Mortgage Association's ("Fannie Mae") (collectively, "Defendants") nation-wide defamation of Plaintiffs.

### PARTIES

2. All Plaintiffs, with the exception of the individuals identified *infra*, are adult residents of the Commonwealth of Virginia and previously worked for the Federal National Mortgage Association ("Fannie Mae").

3. Plaintiffs Nibu Paul, Leela Dogga, Jaya Gandikota, and Revathi Nimmagadda are adult residents of the State of Texas and previously worked for Fannie Mae.

4. Plaintiffs Satish Prasanna, Praveen Buddha, and Bhavani Pamala are adult residents of the State of Maryland and previously worked for Fannie Mae.

5. Plaintiff Vijay Chava is an adult resident of the State of Georgia and previously worked for Fannie Mae.

6. Pulte is an adult resident of the State of Florida and the Director of the Federal Housing Finance Agency (FHFA) and Chairman of the Board of Directors of Fannie Mae.

4

7. The FHFA was created on July 30, 2008, when the Housing and Economic Recovery Act of 2008 (HERA) was signed into law, establishing it as an independent federal agency to oversee and regulate major housing finance entities like Fannie Mae, Freddie Mac, and the Federal Home Loan Banks.

8. Fannie Mae was first chartered by the U.S. government in 1938 to help ensure a reliable and affordable supply of mortgage funds throughout the country.

9. The duties of the Director of FHFA are established as a matter of law by 12 U.S. Code § 4513.

10. The duties of the FHFA as conservator of Fannie Mae are established as a matter of law by 12 U.S.C. § 4617.

11. There is no authorization nor delegation of duties from Congress in any of these legislative schemes for either the Director of FHFA or the Chairman of the Board of Directors of Fannie Mae to issue press releases concerning the reasons for termination of individual employees of Fannie Mae.

## JURISDICTION, VENUE and PROCEDURAL POSTURE

12. This case arises from acts of defamation that arose outside of the Commonwealth of Virginia, aimed at citizens of Virginia, with injuries from that defamation being sustained in Virginia.

13. This case was originally filed in the Circuit Court for Fairfax County, Virginia on August 12, 2025.

14. This case was removed to this Court by Defendant Fannie Mae on September 15, 2025.

15. On September 16, 2025, the US Attorney filed a notice of substitution for Defendant Pulte and moved to dismiss the case on November 20, 2025.

16. On December 4, 2025, the Plaintiffs moved under Federal Rule of Civil Procedure (FRCP) 41(a) to voluntarily dismiss the case against Defendant Pulte only.

17. Defendant Fannie Mae filed its Motion to Dismiss under FRCP 12(b)(6) on November 5, 2025, and Plaintiffs filed their opposition on December 5, 2025.

18. On January 23, 2026, this Court heard the Motion to Dismiss, and granted the motion, but granted Plaintiffs leave to amend within 14 days.

**FACTS**

19. On April 2, 2025, Plaintiffs, who were all employees of Defendants, jointly and severally received an email from Fannie Mae Human Resources (HR) directing them not to come into the office, but to instead attend a Microsoft Teams call at 10 am on April 3, 2025.

20. Plaintiffs joined the Teams call along with what they believe were at least 80 other people, and up to 100 or more.

21. Plaintiffs, along with the other members of the Microsoft Teams call, were all told at the same time that they were all being terminated "for cause" for violating Fannie Mae's Charitable Giving program for fraud.

22. No explanation was given to individuals or to the group, and everyone on the call was identically and simultaneously terminated immediately.

23. Every person in the group was of Indian national origin and most of them were from the Telegu ethnic minority group.

24. The individuals were selected for firing by Fannie Mae because they donated to Indian ethnic charities.

25. On April 8, 2025, Fannie Mae issued a press release along with FHFA, that begins: "Today, the U.S. Federal Housing Finance Agency (U.S. Federal Housing FHFA) and Fannie Mae issued the following statement" See Exhibit 1.

26. That press release contains a statement directly attributed to Defendant Pulte: "Since my swearing-in, we fired over 100 employees from Fannie Mae who we caught engaging in unethical conduct, including facilitating fraud, against our great company. Anyone who commits fraud against Fannie Mae does so against the American people." See Exhibit 1

27. Defendant Pulte also published that statement when he shared a screenshot of said press release to the social media website X (formerly known as "Twitter"). See Exhibit 1.

28. The press release issued by Fannie Mae and republished by Defendant Pulte contains the statement: "Fannie Mae Fires Over 100 Employees for Unethical Conduct, Including the Facilitation of Fraud."

29. The press release issued by Fannie Mae and republished by Defendant Pulte contains the statement: "Since my swearing-in, we fired over 100 employees from Fannie Mae who we caught engaging in unethical conduct, including facilitating fraud, against our great company. Anyone who commits fraud against Fannie Mae does so against the American people."

30. On April 9, 2025, Pulte gave an interview on the Fox News show "The Ingraham Angle" in which he made a third defamatory statement:

31. Third statement: "We also found that they were making donations to the charity and then getting kickbacks – the internal company charity."

32. These statements were read by many people, not only in the United States, but they were also republished in Indian media because all of the individuals fired were of Indian national origin.

33. The statements were republished in Indian media because the statements were of or about the Plaintiffs, who were easily identifiable as the subjects of the statements because of the proximity of the issuance of the statements to the mass firings.

34. The identities of the Plaintiffs being the subject of the statements is easily ascertainable based on the timing of the press release contemporaneous with the mass firing of Indian employees.

35. The Plaintiffs were also identifiable, and the statements "of or about them" because every single one of them was of Indian national origin, and most of them from the Telegu ethnic minority group in India.

36. These Statements are demonstrably false.

37. Defendants Fannie Mae and Pulte both knew at the time the statements were made that they had no evidence of any fraudulent behavior by any of the Plaintiffs, and they made the statements anyway.

38. Defendants Fannie Mae and Pulte made the statements knowing they had no evidence of any misconduct by any Plaintiff for ulterior political and personal motives.

39. These Statements were made by Pulte on behalf, and in furtherance of the business interests, of Fannie Mae.

40. Making such statements in public about the reasons for firing individual employees of an entity in conservatorship is not among the duties delegated or directed by Congress to the Director of the FHFA.

41. Defendants Fannie Mae and Pulte made the statements with knowledge that they were false, or at least with a reckless disregard for the truth of the statements

42. Plaintiffs did not ever or at any time:

    a. Engage in "unethical conduct," nor did they

    b. "Facilitate fraud"

    c. "Receive kickbacks"

    d. Commit fraud against Fannie Mae or the American People.

43. In fact, Plaintiffs were all employees in good standing with Fannie Mae and had never received any form of disciplinary action during their tenure with the company.

44. Defendants had no information on which to reasonably rely that any of the Plaintiffs committed unethical conduct, fraud or received kickbacks.

45. Defendants' statements have negatively impacted Plaintiff's reputations and careers.

46. Defendants have suffered shame and embarrassment among friends and family in India due to the press releases.

47. Despite multiple requests for evidence to Defendants, both directly from Plaintiffs and through counsel, Plaintiffs were not given, and still do not have, any evidence to support the claims of fraud against Plaintiffs, jointly, or severally.

## COUNT I
### Defamation *Per Se*

48. Plaintiffs incorporate the allegations of the paragraphs above as if fully restated herein.

49. Defendants published multiple statements accusing plaintiffs of "unethical conduct," and "facilitating fraud."

50. The statements are defamatory in that:

   a. They were published online and via broadcast television;

   b. They were actionable statements in that:

      i. The statements were false *Schaecher v. Bouffault,* 290 Va. 83, 91-92 (2015); and

      ii. The statements were of such character that they would "tend so to harm the reputation of [Plaintiffs] as to lower [them] in the estimation of [their] community or to deter third persons from associating with [them] or dealing with [them];" (*Id.*)

   c. They were made with malice, as Defendants knew of their falsity or had a reckless indifference to whether they were true, which entitles Plaintiffs to punitive damages. *Government Micro Resources, Inc. v. Jackson,* 624 Va. 63, 71 (2006).

51. The words used in the statements are defamatory *per se* in that:

   a. They are "those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished;" *Tronfeld v. Nationwide Mut. Ins. Co.,* 272 Va. 709, 713 (2006)

   b. They are "those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment;" (*Id.*) and

   c. They are "those which prejudice such person in his or her profession or trade." (*Id.*)

52. Accusing someone of fraud of that magnitude is an act which could be prosecuted as a felony and would both render them unfit for any employment for profit for want of integrity and would prejudice them in their profession or trade, particularly for individuals working in the financial sector and mortgage industries.

53. Therefore, Defendants knew that their public statements about Plaintiffs were false or made them so recklessly as to amount to a willful disregard for the truth. *Gazette, Inc. v. Harris,* et al., 229 Va. 1, 42 (1985).

54. Plaintiffs suffered special harm and direct damages because of these defamatory statements.

55. Plaintiffs have each suffered damages in the amount of $1,000,000.00 for special harm to their personal reputations and business careers.

56. Plaintiffs pray for punitive damages in the amount of $350,000.00 because Defendant Pulte acted with actual malice, such that he published the defamatory statements knowing that Plaintiffs had never engaged in unethical conduct or facilitated fraud, and that Defendant Pulte had no evidence demonstrating that they did, so he either knew they were false or had a reckless indifference to whether they were true. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974).

## COUNT II
### Defamation by Implication

57. Plaintiffs incorporate the allegations of the paragraphs above as if fully restated herein.

58. Each Plaintiff is identifiable as an individual terminated by Fannie Mae within the time period referenced in, or contemporaneously with, Defendants' statements.

59. Defendants published multiple statements accusing plaintiffs of "unethical conduct," and "facilitating fraud."

60. The statements are defamatory in that:

   a. They were published online and via broadcast television;

   b. They were actionable statements in that:

      i. The statements were false *Schaecher v. Bouffault,* 290 Va. 83, 91-92 (2015); and

      ii. The statements were of such character that they would "tend so to harm the reputation of [Plaintiffs] as to lower [them] in the estimation of [their] community or to deter third persons from associating with [them] or dealing with [them];" (*Id.*)

   c. They were made with malice, as Defendants knew of their falsity or had a reckless indifference to whether they were true, which entitles Plaintiffs to punitive damages. *Government Micro Resources, Inc. v. Jackson,* 624 Va. 63, 71 (2006).

61. The words used in the statements are defamatory *per se* in that:

   a. They are "those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished;" *Tronfeld v. Nationwide Mut. Ins. Co.,* 272 Va. 709, 713 (2006)

   b. They are "those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment;" (*Id.*) and

12

      c.      They are "those which prejudice such person in his or her profession or trade." (*Id.*)

62.     Accusing someone of fraud of that magnitude is an act which could be prosecuted as a felony and would both render them unfit for any employment for profit for want of integrity and would prejudice them in their profession or trade.

63.     Therefore, Defendants knew that their public statements about Plaintiffs were false or made them so recklessly as to amount to a willful disregard for the truth. *Gazette, Inc. v. Harris,* et al., 229 Va. 1, 42 (1985).

64.     Plaintiffs suffered special harm and direct damages because of these defamatory statements.

65.     Plaintiffs have each suffered damages in the amount of $1,000,000.00 for special harm to their personal reputations and business careers.

66.     Plaintiffs pray for punitive damages in the amount of $350,000.00 because Defendant Pulte acted with actual malice, such that he published the defamatory statements knowing that there was no evidence Plaintiffs had never engaged in unethical conduct or facilitated fraud, and that Defendant Pulte had no evidence demonstrating that they did, so he either knew they were false or had a reckless indifference to whether they were true. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement in their favor against Defendants William Pulte and the Federal National Mortgage Association, jointly and severally, and prays that this Court:

1. Award compensatory damages against Defendants in an amount to be proven at trial, but in any event not less than $2,000,000.00 per Plaintiff;

2. Award punitive damages against Defendant Pulte in the amount of $350,000.00;

3. Award post-judgement interest at six (6) percent per annum until the judgement is satisfied;

4. Grant such other and further relief as the Court should deem proper and just.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury on all issues for which a trial by jury may be had.

Respectfully submitted,
Plaintiffs

By: \_\_\_\_/s/  Milton C. Johns_____
Milton C. Johns, VSB No. 42305
EXECUTIVE LAW PARTNERS, PLLC
11130 Fairfax Blvd., Suite 303
Fairfax, VA 22030
571-500-1010
571-408-8102 (f)
mjohns@xlppllc.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on February 6, 2026, I filed the foregoing with the Court's ECF system, which will send electronic notice of the same to all counsel of record.

_____/s/_____<br>
Milton C. Johns<br>
Executive Law Partners