# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| ANIL KANCHARLA, et al., | Civil Case No.: 1:25-cv-01540-LMB-IDD |
| Plaintiffs, | **DEFENDANT THE FEDERAL NATIONAL MORTGAGE ASSOCIATION'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND AND RELEVANT ALLEGATIONS.................................................... 3

PROCEDURAL BACKGROUND.................................................................................... 4

LEGAL STANDARD........................................................................................................ 5

ARGUMENT .................................................................................................................... 6

    I.      Fannie Mae Is Not Liable For FHFA Director Pulte's Statements........................ 6

    II.     Plaintiffs Fail To Allege A Statement "Of Or Concerning" Any Plaintiff ........... 9

    III.    Plaintiffs Fail To Plead That Defendants Acted With Actual Malice, As Virginia's Anti-SLAPP Statute Requires............................................................. 15

          A.     Plaintiffs must plausibly plead actual malice........................................... 16

          B.     Plaintiffs' failure to plead actual malice in the FAC warrants dismissal................................................................................................... 17

CONCLUSION................................................................................................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdvanFort Co. v. Int'l Registries, Inc.*,
  2015 WL 2238076 (E.D. Va. May 12, 2015) ........................................................................ 15

*Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*,
  821 F. App'x 234 (4th Cir. 2020) ...................................................................................... 17

*Alexis v. Kamras*,
  2020 WL 7090120 (E.D. Va. Dec. 3, 2020) ...................................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................... 1, 3, 5, 17

*Auckland v. Gilead Scis., Inc.*,
  2025 WL 314029 (W.D. Va. Jan. 28, 2025) ...................................................................... 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 5

*Carey v. Throwe*,
  957 F.3d 468 (4th Cir. 2020) ............................................................................................ 16

*Collins v. Yellen*,
  594 U.S. 220 (2021)......................................................................................................... 7, 8

*Ewell v. Boutwell*,
  121 S.E. 912 (Va. 1924) .......................................................................................... 10, 11, 12

*Fairfax v. CBS Broad. Inc.*,
  534 F. Supp. 3d 581 (E.D. Va. 2020), *aff'd sub nom.* 2 F.4th 286 (4th Cir. 2021) ........... 17, 18

*Fornshill v. Ruddy*,
  89 F.3d 828 (Table), 1996 WL 333223 (4th Cir. June 11, 1996) .......................................... 13

*Fuste v. Riverside Healthcare Ass'n, Inc.*,
  575 S.E.2d 858 (Va. 2003) ................................................................................................ 12

*Garnett v. Remedi Seniorcare of Va., LLC*,
  892 F.3d 140 (4th Cir. 2018) .......................................................................................... 6, 7

*Gazette, Inc v. Harris*,
  325 S.E.2d 713 (Va. 1985) ............................................................................................ 9, 14

*Hanks v. Wavy Broadcasting, LLC*,
  2012 WL 405065 (E.D. Va. Feb. 8, 2012)................................................................. 9, 10, 11

*Harless v. Nicely*,
  900 S.E.2d 503 (Va. Ct. App. 2024)................................................................................. 18

*Jackson v. Hartig*,
  645 S.E.2d 303 (Va. 2007) .............................................................................................. 18

*Kashdan v. George Mason Univ.*,
  70 F.4th 694 (4th Cir. 2023) ......................................................................................... 5, 15

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*King v. Rubenstein*,
   825 F.3d 206 (4th Cir. 2016) .............................................................. 5, 15

*Liverman v. City of Petersburg*,
   844 F.3d 400 (4th Cir. 2016) .................................................................... 16

*Lokhova v. Halper*,
   441 F. Supp. 3d 238 (E.D. Va. 2020), *aff'd*, 995 F.3d 134 (4th Cir. 2021) ............................ 14

*Masson v. New Yorker Mag.*,
   501 U.S. 496 (1991) ................................................................................. 18

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012) ............................................................... 17, 18

*McCullough v. Gannett, Co.*,
   2023 WL 3075940 (E.D. Va. Apr. 25, 2023) ......................................... 18

*Meyer v. Holley*,
   537 U.S. 280 (2003) ................................................................................... 6

*Nigro v. Va. Commw. Univ./Med. Coll. of Va.*,
   492 F. App'x 347 (4th Cir. 2012) ......................................................... 12

*Parker v. Carilion Clinic*,
   819 S.E.2d 809 (Va. 2018) ........................................................................ 7

*Rolofson v. Fraser*,
   904 S.E.2d 284 (Va. 2024) ...................................................................... 16

*Scheduled Airlines Traffic Offices, Inc. v. Objective Inc.*,
   180 F.3d 583 (4th Cir. 1999) ............................................................. 10, 15

*Shah v. Med. Econ. Co.*,
   17 Va. Cir. 162 (1989) ............................................................................ 12

*Shore v. Charlotte-Mecklenburg Hosp. Auth.*,
   412 F. Supp. 3d 568 (M.D.N.C. 2019) ................................................... 13

*Tomlin v. Int'l Bus. Machs. Corp.*,
   84 Va. Cir. 280 (Va. Cir. Ct. 2012) ...................................................... 13

**Statutes**

12 U.S.C. § 4511 ................................................................................................. 3

12 U.S.C. § 4617 ................................................................................................. 3

12 U.S.C. § 4617(b)(2)(B)-(C) ........................................................................... 8

12 U.S.C. § 4617(b)(2)(J)(i) ............................................................................... 8

12 U.S.C. § 4617(b)(2)(J)(ii) .............................................................................. 7

12 U.S.C. § 4617(j)(1) ........................................................................................ 3

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

12 U.S.C. § 4617(j)(4) ........................................................................................... 3

28 U.S.C. § 2680(h) .............................................................................................. 7

Pub. L. No. 110-289, § 1101 (2008) ...................................................................... 3

Pub. L. No. 110-289, § 1145 (2008) ...................................................................... 3

Va. Code Ann. § 8.01-223.2(A) ..................................................................... 16, 18

Va. Code Ann. § 8.01-223.2(B) ........................................................................... 16

**Other Authorities**

India Today World Desk, *US Giant Fannie Mae Fires 200, Mostly Telugus, Over Salary Fraud: Report*, India Today (Apr. 16, 2025), https://www.indiatoday.in/world/us-news/story/us-company-lays-off-200-indian-americans-telugu-employees-in-donation-scam-fannie-mae-apple-2709852-2025-04-16 .................................................................. 14, 15

News Release, *William J. Pulte Sworn In as 5th Director of U.S. Federal Housing (FHFA)*, Fed. Housing Fin. Agency (Mar. 14, 2025), https://www.fhfa.gov/news/news-release/william-j.-pulte-sworn-in-as-5th-director-of-u.s.-federal-housing-fhfa ...................... 13

TOI Tech Desk, *US Company Lays Off 200 Indian-Americans in "Donation Scam" Related to Telugu Organizations; Similar to Firing at Apple*, Times of India (updated Apr. 16, 2025), http://timesofindia.indiatimes.com/articleshow/120075189.cms ........................... 14, 15

## INTRODUCTION

In May 2024, the Federal National Mortgage Association ("Fannie Mae") received notice from the Department of Justice ("DOJ") of a criminal investigation into certain charitable organizations to which the employees of Fannie Mae and other companies had contributed using company matching programs.[1]  Fannie Mae was advised that employees may have used the company's Matching Gifts Program to funnel money to those organizations in exchange for personal benefits.  Fannie Mae promptly commenced a comprehensive investigation that examined, among other things, data from its Matching Gift Program and communications between employees.  Nearly a year later, after completing its investigation, Fannie Mae terminated certain employees found to have violated Fannie Mae's Matching Gift Program guidelines, its Fraud Risk Management policy, its Ethics policy, and/or its Code of Conduct.[2]  Some of those former employees have brought separate claims against Fannie Mae asserting that their terminations were unlawful, and their claims will receive due consideration in separate proceedings.  *See* Compl., *Kancharla v. Fed. Nat'l Mortgage Ass'n*, No. 1:25-cv-02346 (D.D.C. filed July 21, 2025, Dkt. 1.  In this case, plaintiffs focus their attention on certain statements made by William Pulte, the Director of the Federal Housing Finance Agency ("FHFA"), following those terminations, alleging that the statements defamed them.

The Court recognized that plaintiffs' first complaint failed to state a claim as a matter of law.  Plaintiffs' amended complaint suffers from the same problems as before; indeed, plaintiffs'

---

[1] The organizations flagged by DOJ were all associated with the Telugu ethno-linguistic group.

[2] The operative complaint alludes to this background, implying that Fannie Mae terminated the employees based on their ethnicity, without providing crucial details.  The Court need not consider this context when resolving this motion, but Fannie Mae includes it to illustrate a basic deficiency in plaintiffs' claims: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

amended pleading hardly differs from the original at all.  Plaintiffs attack statements by the United States that (1) cannot be attributed to Fannie Mae, (2) made no reference to them, and (3) were not malicious.

To start, the statements at issue here were made by Director Pulte in his role as a government official, not by Fannie Mae.  Plaintiffs still cannot articulate how Fannie Mae could be held liable for statements properly attributed to the United States.  Plaintiffs do not improve this theory by alleging that the FHFA Director lacks the power to issue news releases, *see* Dkt.29, First Am. Compl. ("FAC") ¶¶ 9-11, 40, which is both legally wrong and irrelevant to establishing vicarious liability against Fannie Mae.

Nor do plaintiffs' new allegations plausibly suggest that the challenged statements were "of or concerning" plaintiffs.  In the FAC, plaintiffs now allege that the statements were republished in Indian media "because the statements were of or about them."  *Id.* ¶ 33.  But the purportedly defamatory statements by the United States make no reference to plaintiffs, or to the ethnicity of the terminated employees.  The subsequent Indian media coverage of Fannie Mae's terminations therefore could not have relied on the statements to draw that conclusion or to identify these plaintiffs (which the media accounts are not alleged to have done).  These new allegations weaving in Indian media coverage get plaintiffs no further toward plausibly pleading that the statements would have been understood to be "of or concerning" them at the time made, rather than anyone else who was terminated by Fannie Mae in this timeframe.

Finally, plaintiffs still fail to plead that the statements were made with actual malice.  Plaintiffs' new allegations simply dress up legal conclusions as factual allegations—asserting, for instance, that Fannie Mae acted with the legal definition of actual malice.  *See* FAC ¶¶ 37-38, 41.  And to the extent plaintiffs assert in conclusory terms that Defendants acted with an "ulterior

motive," FAC ¶ 38, they fail to allege facts sufficient for the Court to conclude that Fannie Mae did not in fact terminate employees lawfully out of concern about wrongful conduct, including the facilitation of fraud, as the statement said. These "naked assertion[s]" and "formulaic recitation[s] of the elements of a cause of action" cannot sustain the complaint. *Iqbal*, 556 U.S. at 678 (first alteration in original).[3]

Despite having the opportunity to amend, plaintiffs have only provided yet more conclusory allegations and have done nothing to address the heart of the pleading deficiencies here. These flaws cannot be cured: they are inextricably bound up with the statements upon which plaintiffs base their claims. The Court should dismiss the FAC with prejudice.

## BACKGROUND AND RELEVANT ALLEGATIONS

Congress chartered Fannie Mae to provide a "reliable and affordable supply" of mortgage financing in the United States. FAC ¶ 8. During the 2008 financial crisis, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), pursuant to which FHFA's Director placed Fannie Mae in conservatorship on September 6, 2008. *See* Pub. L. No. 110-289, §§ 1101, 1145 (2008), 122 Stat. 2654, 2661, 2734, 2761-62 (codified at 12 U.S.C. §§ 4511, 4617). HERA provides that "in any case in which the Agency [FHFA] is acting as conservator . . . [t]he Agency shall not be liable for any amounts in the nature of penalties or fines." *Id.* § 1145, 122 Stat. 2766-67 (codified at 12 U.S.C. § 4617(j)(1), (4)) (the "HERA Penalty Bar"). Fannie Mae remains under conservatorship today.

Plaintiffs allege that on April 3, 2025, Fannie Mae hosted an internal Microsoft Teams call for certain employees. FAC ¶¶ 19-20. According to the FAC, the 61 plaintiffs, who were all Fannie Mae employees, joined the Teams call along with "what they believe were at least 80

---

[3] For quotations, unless otherwise noted, all emphasis is added and quotation marks are omitted.

other people, and up to 100 or more." FAC ¶ 20.  A member of the Fannie Mae Human Resources team allegedly informed the employees on the call that they had violated Fannie Mae's Charitable Giving program and so were being terminated "for cause." FAC ¶ 21.

Plaintiffs allege that five days later, FHFA and Fannie Mae issued a joint online news release that Director Pulte also published on his X account.  FAC ¶¶ 25, 27.  Two statements in the release are at issue here.  FAC ¶¶ 25-29 (the "News Release Statements").  First, the news release was titled: "Fannie Mae Fires Over 100 Employees for Unethical Conduct, Including the Facilitation of Fraud."  FAC ¶ 28.  And second, as part of this joint news release, Director Pulte stated: "Since my swearing-in, we fired over 100 employees from Fannie Mae who we caught engaging in unethical conduct, including facilitating fraud, against our great company.  Anyone who commits fraud against Fannie Mae does so against the American people."  FAC ¶¶ 26, 29.

Plaintiffs allege that the day after releasing the statement, Director Pulte appeared for an interview on a cable news show.  FAC ¶ 30.  In that interview, Director Pulte stated: "We also found that they were making donations to the charity and then getting kickbacks—the internal company charity."  FAC ¶ 31 (the "Cable News Statement").

## PROCEDURAL BACKGROUND

Plaintiffs filed this suit in the Fairfax County, Virginia Circuit Court, alleging defamation *per se* (Count I) and defamation by implication (Count II) under Virginia law.  FAC ¶¶ 48-66. They allege that the News Release Statements and the Cable News Statement are defamatory in their entirety because plaintiffs did not engage in "unethical conduct" or "facilitate fraud."  FAC ¶¶ 42, 56, 66.

Fannie Mae removed the action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446 on September 15, 2025.  Dkt. 1.  The next day, pursuant to 28 U.S.C. § 2679(c)-(d), the United States of America filed its Notice of Substitution in place of Director Pulte and its attached

Certification that Director Pulte "was acting within the scope of his federal office or employment at the time of the conduct out of which the complaint arises." Dkt. 4-1. After both the United States and Fannie Mae moved to dismiss the initial Complaint, pointing out that the United States is immune from defamation claims under the Federal Tort Claims Act ("FTCA") (Dkts. 16, 18), plaintiffs voluntarily dismissed their claims against the United States (Dkt. 21). The Court dismissed the Complaint but allowed plaintiffs to amend. Dkt. 27. Plaintiffs have now filed a FAC raising the same claims against Director Pulte and Fannie Mae.[4] The United States of America has again filed a Notice of Substitution and Certification. Dkt. 36.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss, the court "need not accept as true 'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023). The Court also "may consider documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *id.*, as well as "documents attached to the complaint . . . 'so long as they are integral to the complaint and authentic,'" *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

---

[4] Plaintiffs have not sought to revive their claims against former Fannie Mae CEO Priscilla Almodovar from the sister action, *United States v. Almodovar*, No. 1:25-cv-01539 (E.D. Va.). They also have withdrawn any claim for punitive damages against Fannie Mae, now seeking punitive damages only "against Defendant Pulte." FAC Prayer for Relief ¶ 2.

## ARGUMENT

### I.    Fannie Mae Is Not Liable For FHFA Director Pulte's Statements

Fannie Mae was an improper defendant in this case the first time around, and it remains so today.  As in the initial complaint, the FAC principally focuses on statements by Director Pulte, *see* FAC ¶¶ 26, 29, 31, and seeks to draw Fannie Mae into this lawsuit under a theory of vicarious liability, *see* FAC ¶ 39 (alleging that "[t]hese Statements were made by Pulte on behalf, and in furtherance of the business interests, of Fannie Mae").  But that effort fails as a matter of law now, just as it did before.  The Department of Justice has continued to explain that Director Pulte was acting as an official of the United States Government at the time of these events and is representing the United States' interests in that capacity here.  Fannie Mae does not control the United States.  The purportedly defamatory statements cannot be attributed directly to Fannie Mae nor can Fannie Mae be held vicariously liable for statements attributable to the United States in the FAC.  None of plaintiffs' new allegations change these legal realities.

Vicarious liability applies only to "principals or employers," and only for "acts of their agents or employees in the scope of their authority or employment."  *Meyer v. Holley*, 537 U.S. 280, 285 (2003).  A plaintiff must be able to demonstrate that the defendant "(a) bears at least partial responsibility for the [allegedly] tortious conduct" or "(b) has some ability to limit the likelihood that [the actor] would commit a tort."  *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 142-44 (4th Cir. 2018) (determining in Virginia defamation case whether employee's statements "were within the scope of his employment and thus whether his employer can be held vicariously liable" by applying "scope of employment" test).

The FAC nowhere alleges—much less contains any supporting allegations to create a plausible inference—that in making the challenged statements Director Pulte was "either (a) performing work assigned by [Fannie Mae] or (b) engaging in a course of conduct subject to

6

[Fannie Mae's] control." *Garnett*, 892 F.3d at 144. On the contrary, many of plaintiffs' allegations remain unchanged in the FAC, and those allegations still belie any assertion that Director Pulte was acting as an agent or employee of Fannie Mae in the News Release Statements and Cable News Statement. *See* FAC ¶ 6 (alleging William Pulte is Director of FHFA); FAC ¶¶ 25, 27 (alleging Director Pulte published "a press release" that was issued by "*FHFA*" as well as Fannie Mae, and that Director Pulte "shared a screenshot of said press release to the social media website X" without alleging he did so as a Fannie Mae agent or that his account identifies him as such); FAC ¶¶ 26, 29 (alleging Director Pulte's statement in the news release noted the number of people fired "[s]ince my swearing-in" as Director of FHFA); FAC ¶ 30 (allegation regarding the Cable News Statement in "an interview on the Fox News show 'The Ingraham Angle,'" on which Director Pulte appeared as the FHFA Director). The United States's prior substitution as the defendant in the case only reinforces that Director Pulte was acting in his official government capacity. *See* Dkt. 4. As the United States has pointed out, plaintiffs are impermissibly seeking to circumvent Congress's considered decision to retain the United States' sovereign immunity under 28 U.S.C. § 2680(h) for allegedly defamatory statements made by federal employees, by trying to hold Fannie Mae liable for the United States' purported defamatory statements. Dkt. 18, at 10 n.8.[5]

Moreover, Fannie Mae cannot be vicariously liable for statements for which there is no primary liability. *See, e.g.*, *Parker v. Carilion Clinic*, 819 S.E.2d 809, 817 n.3 (Va. 2018)

---

[5] Plaintiffs cannot avoid these obstacles through their conclusory allegation that Director Pulte made the statements "on behalf, and in furtherance of the business interests, of Fannie Mae." FAC ¶ 39. The Director is the head of Fannie Mae's regulator and conservator. By law, the Director is authorized to act in what he determines is "in the best interests of the regulated entity *or the Agency*," and in the broader public interest. *Collins v. Yellen*, 594 U.S. 220, 238 (2021) (emphasis in original) (quoting 12 U.S.C. § 4617(b)(2)(J)(ii)).

(noting vicarious liability unavailable if no primary tort liability proved).  Because plaintiffs' claims cannot be maintained against the United States, they cannot be maintained against Fannie Mae.

The FAC tries to overcome this obvious bar to Fannie Mae's liability in two ways, but neither approach succeeds.  First, the FAC contains new allegations about the nature of the FHFA Director's role, claiming that Congress did not delegate to the FHFA Director the authority to make public statements about the firings at Fannie Mae.  FAC ¶¶ 11, 40.  This is simply not the case: FHFA is given "expansive authority in its role as a conservator," and is statutorily "authorized to take control of a regulated entity's assets *and operations*" and to "*conduct business* on its behalf."  *Collins*, 594 U.S. at 238-39 (citing 12 U.S.C. § 4617(b)(2)(B)-(C)).  It also may exercise "such incidental powers as shall be necessary to carry out" its powers as conservator.  12 U.S.C. § 4617(b)(2)(J)(i).  Issuing news releases clearly falls within the wide boundaries of the Director's authority.  And for the reasons explained in the United States' motion to dismiss, the FTCA's retainer of sovereign immunity for defamation claims would mean little if a plaintiff could sidestep it merely by alleging that the employee acted outside the scope of their authority.  *See* Dkt. 38, at 15-16.  Regardless, these allegations still do nothing to establish that the United States was acting at Fannie Mae's *direction* or subject to its *control* when making these statements, which plaintiffs must show to plausibly allege liability on Fannie Mae's part.

Second, the FAC notes that Fannie Mae jointly issued the news release with FHFA.  FAC ¶¶ 25, 28.[6]  But the news release, issued on FHFA's website, directly attributes the principal statement about which plaintiffs complain—a direct quote from Director Pulte—*to* Director

---

[6] The FAC does not allege that Fannie Mae made the Cable News Statement.  *See* FAC ¶ 30.

Pulte.  *See* FAC ¶ 26; Dkt. 29-1.  Plaintiffs no longer challenge the statement made by Fannie

Mae's CEO.  Indeed, the FAC alleges that "*[t]hese Statements were made by Pulte.*"  FAC ¶ 39.

The FAC accordingly does not plausibly allege that the statements at issue were Fannie Mae's.

## II.    Plaintiffs Fail To Allege A Statement "Of Or Concerning" Any Plaintiff

Putting aside the absolute bar of Fannie Mae's liability for acts of the United States,

plaintiffs' claims independently must be dismissed once again because the News Release

Statements and Cable News Statement are not plausibly alleged to concern any individual

plaintiff, or plaintiffs collectively.  Virginia law requires a defamation plaintiff to allege that the

defamatory statement was "of or concerning" the plaintiff.  *E.g.*, *Gazette, Inc v. Harris*, 325

S.E.2d 713, 738 (Va. 1985).  "[I]f the publication on its face does not show that it applies to the

plaintiff, the publication is not actionable, unless the allegations and supporting

contemporaneous facts connect the libelous words to the plaintiff."  *Id.*

The FAC does not plausibly allege that the statements concern plaintiffs, any more than

the original Complaint did.  The News Release Statements merely assert that Fannie Mae had

fired more than 100 employees for "unethical conduct, including facilitating fraud."  FAC ¶ 26;

*see* FAC ¶ 28.  This language does not identify anyone.  Likewise, the Cable News Statement

refers only to an unspecified group that was "getting kickbacks."  FAC ¶ 31.  Nothing in that

televised statement named or identified any of the plaintiffs as having received kickbacks while

at Fannie Mae.  These allegations are facially insufficient to allege a statement "of or

concerning" plaintiffs.

*Hanks v. Wavy Broadcasting, LLC*, 2012 WL 405065 (E.D. Va. Feb. 8, 2012), illustrates

these pleading deficiencies.  In *Hanks*, a broadcast news company published statements via a

television news segment and an accompanying online article relating to "unscrupulous tax

preparers."  *Id.* at *1.  The statements did not mention the plaintiff by name, but they did refer to

Reliable Tax, a corporation of which the plaintiff was president. *Id.* at *6. The plaintiff, a professional tax preparer, alleged that the statements, taken in context, defamed him. *Id.* The court disagreed, holding that the plaintiff failed the "of or concerning" test because, "even considering the inferences of the statements taken in context, no reading of the allegedly defamatory statements can demonstrate that the publication was intended to refer to Plaintiff and would be so understood by persons reading it who knew him." *Id.* at *8. The statements referred to "tax preparers as a class," and made "no direct or indirect reference to" the plaintiff. *Id.* at *8-9. The plaintiff therefore failed to plead "sufficient facts to demonstrate that the allegedly defamatory statements either directly or indirectly—through inference or by implication—refer to him." *Id.* at *9.

Likewise, in *Scheduled Airlines Traffic Offices, Inc. v. Objective Inc.*, 180 F.3d 583 (4th Cir. 1999), the defendant stated in an annual report that its internal programmers "[p]ick[ed] up where an outside firm left off" and "spent months modifying and rewriting software" for a project, *id.* at 592. The plaintiff, which was the outside firm being discussed, asserted that this statement was defamatory. *Id.* But the Fourth Circuit held that this statement could not be "of or concerning" the plaintiff firm, because the statement did not name the plaintiff firm and did not "provide any identifying details that would 'lead those who knew or knew of [the firm] to believe that the [statement] was intended to refer to'" the plaintiff firm. *Id.* at 593.

And in *Ewell v. Boutwell*, 121 S.E. 912 (Va. 1924), a foundational Virginia case on the "of [or] concerning" test, the Virginia Supreme Court held that allegedly defamatory statements could not be said to be about a plaintiff who was a member of the Virginia House of Delegates when he was not personally named in an article accusing unnamed delegates of having taken bribes. *See id.* at 915. The court held that "[t]he words sued on, fairly construed, do not point

10

directly to the plaintiff individually, nor to him as a member of a group or class," and that since "the words fairly construed and so supplemented do not in fact point to the plaintiff, he cannot extend their meaning." *Id.* at 916.

Here, as in *Hanks*, *Scheduled Airlines*, and *Ewell*, the alleged defamatory statements do not mention any plaintiff by name. As in those cases, no reading of the statements could demonstrate that they were intended to or did, in fact, identify these 61 particular plaintiffs (or anyone else). Indeed, plaintiffs do not allege that they (or even the larger group of terminated employees of which they were a part) were the *only* Fannie Mae employees fired during this period. They thus cannot plausibly allege that when Director Pulte stated that Fannie Mae "fired over 100 employees" who were "engaging in unethical conduct" "*[s]ince [his] swearing-in*," or when the news release referred generally to the firing of over 100 employees, the statements necessarily referred to plaintiffs. FAC ¶¶ 26, 28. As plaintiffs themselves acknowledge, the News Release Statements refer to "over 100 employees" generally, *id.*, just as the statements in *Hanks* referred to "tax preparers as a class," 2012 WL 405065, at *8.

The FAC further deepens the hole plaintiffs dug for themselves. In the FAC, plaintiffs allege that the 61 of them joined the Teams call with "at least 80 other people, and up to 100 or more" aside from them. FAC ¶ 20. They allege that *everyone* on the call was fired. FAC ¶ 21. It thus is not even clear that the news release's *total* tally of "[o]ver 100 [e]mployees" (FAC ¶ 28) refers to the entire, larger set of individuals fired on that Teams call. Given that plaintiffs were part of a larger unnamed group of fired employees, they cannot plausibly allege that the news release definitely was referring to each of them in particular. As the Virginia Supreme Court held in *Ewell*, statements do not "point directly to the plaintiff individually, nor to him as a member of a group or class," if they refer generally to some subset of a larger group—there,

11

members of the Virginia House of Delegates, here, a large group of fired employees—of which the plaintiff is also a part. 121 S.E. at 916. Certainly, with a group so large, plaintiffs do not and cannot plausibly allege that each of them would certainly be understood as being in the unnamed sub-category of employees specifically fired for "unethical conduct" or "facilitating fraud." FAC ¶ 26; *see* FAC ¶ 28.[7] "The class is too amorphous and large to allow any one person who alleges he is a member to bring an individual action for libel." *Shah v. Med. Econ. Co.*, 17 Va. Cir. 162, at *1 (1989); *see Ewell*, 121 S.E. at 915.

Plaintiffs are equally unable to allege that the Cable News Statement concerns them. The statement "[w]e also found that *they* were making donations to the [internal company] charity and then getting kickbacks" lacks the requisite specificity as to identification. FAC ¶ 31. Nothing in that statement or elsewhere in the FAC provides any indication of which particular people were "getting kickbacks," *id.*, much less shows any connection to any plaintiffs in this lawsuit. And again, plaintiffs cannot explain how that statement can be attributed to Fannie Mae at all.

The FAC makes two new sets of allegations to try to meet the "of or concerning" requirement. Both fail. To start, plaintiffs make the generic allegation that they "were easily identifiable as the subjects of the statements because of the proximity of the issuance of the

---

[7] Whether an employee engages in "unethical conduct" is a viewpoint-dependent question which cannot form the basis of a defamation claim. *See, e.g., Nigro v. Va. Commw. Univ./Med. Coll. of Va.*, 492 F. App'x 347, 356 (4th Cir. 2012) (affirming order granting motion to dismiss, holding that statements providing speaker's "perceptions of [a student's] performance" are opinions because they "cannot be proven false"); *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 860-62 (Va. 2003) (affirming judgment sustaining demurrer as to, inter alia, statements that plaintiff was "unprofessional" because statements "w[ere] dependent on the speaker's viewpoint and are, therefore, expressions of opinion"). Accordingly, the only potential factual statements at issue, as opposed to non-actionable opinion statements about "unethical conduct," are that some subset of those fired facilitated "fraud" and that an undetermined "they" received kickbacks. FAC ¶¶ 26, 28, 31.

statements to the mass firings." FAC ¶ 33; *see* FAC ¶ 34. However, mere temporal proximity of a statement to an event does nothing to show that the statement was about every person involved in that event. *See, e.g.*, *Fornshill v. Ruddy*, 89 F.3d 828 (Table), 1996 WL 333223, at *3 (4th Cir. June 11, 1996) (dismissing defamation claim regarding article written shortly after government report it criticized, because statements in article were not "of [or] concerning" plaintiff park police officer); *Tomlin v. Int'l Bus. Machs. Corp.*, 84 Va. Cir. 280, 296, 298 (Va. Cir. Ct. 2012) (dismissing defamation claim regarding statements made in the wake of employee's firing because "[p]laintiffs have pleaded nothing to show that the statements purportedly made by [defendant] intended to refer to [plaintiff] and that someone on the receiving end of said statements would necessarily understand the statements to be in reference to [plaintiff]"). It is particularly unpersuasive here, since the challenged statement stated that "over 100 employees" had been fired for "unethical conduct" "*[s]ince [Director Pulte's] swearing-in*," FAC ¶ 26—i.e., over a monthlong timeframe. *See* News Release, *William J. Pulte Sworn In as 5th Director of U.S. Federal Housing (FHFA)*, Fed. Housing Fin. Agency (Mar. 14, 2025), https://www.fhfa.gov/news/news-release/william-j.-pulte-sworn-in-as-5th-director-of-u.s.-federal-housing-fhfa. And, again, plaintiffs do not (and cannot) allege that they were the only employees terminated over that period of time.[8]

Plaintiffs also newly allege that they could be identified because they are all of Indian heritage. FAC ¶ 35; *see* FAC ¶¶ 32, 34. But that allegation does not sustain their defamation claim, because neither the News Release Statements nor the Cable News Statement mention

---

[8] The court may take judicial notice of the date of Director Pulte's swearing-in from the FHFA's news release. *See Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019) ("The court may take judicial notice of public documents and government documents because their sources 'cannot reasonably be questioned.'").

anything about the ethnicity of those fired. *See* FAC ¶¶ 26, 28, 31. For this same reason, it is irrelevant that Indian media allegedly later published articles mentioning that unidentified Indian employees were fired—such accounts were necessarily based on sources *other than* the at-issue statements. FAC ¶¶ 32-33. The fact that any challenged statement may have been referenced by other entities having nothing to do with this litigation does not change the nature of the statements themselves and the failure of plaintiffs to demonstrate the requisite threshold requirement of a viable defamation claim—identification. What matters are the particular words in the challenged statements and the intent with which a defendant published them. *See, e.g.*, *Lokhova v. Halper*, 441 F. Supp. 3d 238, 262 n.23 (E.D. Va. 2020) (Brinkema, J.) (stating that publications by different entities cannot be considered together for "of or concerning" test "where, as here, the publications clearly identifying [the plaintiff] were not published by the [defendant]"), *aff'd*, 995 F.3d 134 (4th Cir. 2021). And the alleged stories published by Indian media outlets still do not "connect the [allegedly] libelous words to" any particular "plaintiff," or to the group of them. *Gazette, Inc.*, 325 S.E.2d at 738. Plaintiffs allege themselves to have been part of a significantly larger group.

Moreover, those very Indian news stories make it *harder*, not easier, to claim that the News Release Statements and Cable News Statements are "of or concerning" plaintiffs. They note that "the total number of employees who have [been] let go is *700*," not just plaintiffs' group of 61, and that the group "sacked on 'ethical grounds'" numbered 200.[9] One story even

---

[9] TOI Tech Desk, *US Company Lays Off 200 Indian-Americans in "Donation Scam" Related to Telugu Organizations; Similar to Firing at Apple*, Times of India (updated Apr. 16, 2025), http://timesofindia.indiatimes.com/articleshow/120075189.cms; *see* India Today World Desk, *US Giant Fannie Mae Fires 200, Mostly Telugus, Over Salary Fraud: Report*, India Today (Apr. 16, 2025), https://www.indiatoday.in/world/us-news/story/us-company-lays-off-200-indian-americans-telugu-employees-in-donation-scam-fannie-mae-apple-2709852-2025-04-16. "A court may take judicial notice of newspaper articles at the motion to dismiss stage when the

dates the firings done on "ethical grounds" to "April 9 and 10," a week after plaintiffs allege they were fired and *after* the date of the News Release Statements.[10]  These details would point the reader *away* from plaintiffs, not toward any of them.  Moreover, the stories tend to refute, rather than to prove, plaintiffs' allegations of falsity, by confirming that those discussed in the News Release Statements were terminated because of improper conduct, not because of their national origin or merely because they "donated to Indian ethnic charities."  FAC ¶ 24.[11]

Because plaintiffs' FAC neither alleges nor permits the necessary inference that the various statements were intended to refer specifically to them and would be so understood by others who knew plaintiffs, they cannot satisfy Virginia's "of or concerning" requirement.  *See, e.g.*, *Scheduled Airlines Traffic Offs.*, 180 F.3d at 592.  For this independent reason, the FAC must be dismissed.

## III.  Plaintiffs Fail To Plead That Defendants Acted With Actual Malice, As Virginia's Anti-SLAPP Statute Requires

Because the News Release Statements and Cable News Statement are on a matter of public concern, Virginia's anti-SLAPP law requires plaintiffs to plead and prove actual malice. The initial Complaint came nowhere close to satisfying those standards, and the single

---

articles discuss the subject matter of the case."  *AdvanFort Co. v. Int'l Registries, Inc.*, 2015 WL 2238076, at *10 n.10 (E.D. Va. May 12, 2015).  The Court also may consider these stories because the FAC directly references and relies on these supposed "republi[cations] in Indian media."  FAC ¶¶ 32-33; *see Kashdan*, 70 F.4th at 700 (considering materials incorporated into complaint by reference); *King*, 825 F.3d at 212 (considering materials "integral to the complaint").

[10] India Today World Desk, *supra*.

[11] *See* TOI Tech Desk, *supra* ("Some employees are alleged to have colluded with non-profit organisations [sic] like Telugu Association of North America (TANA) and misused company funds."); India Today World Desk, *supra* ("The now-sacked employees allegedly collaborated with nonprofit organisations — some linked to the Telugu community in the US — and falsified donations to exploit the programme and access company funds.").

conclusory allegation of bad motive in the FAC—that defendants made the statements at issue "for ulterior political and personal motives," FAC ¶ 38—does nothing to salvage their claims.

> **A.      Plaintiffs must plausibly plead actual malice.**

Virginia's anti-SLAPP law provides that "[a] person shall be immune from tort liability if the tort claim is based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States made by that person that are communicated to a third party."  Va. Code Ann. § 8.01-223.2(A).  This immunity can be pierced only as to "statements that the declarant knew or should have known were false or were made with reckless disregard for whether they were false."  *Id.* § 8.01-223.2(B).  The statute thus "expressly incorporates" the actual malice standard for liability.  *Auckland v. Gilead Scis., Inc.*, 2025 WL 314029, at *5 (W.D. Va. Jan. 28, 2025).  The anti-SLAPP law requires plaintiffs to plead actual malice even if they are private figures.  *See Alexis v. Kamras*, 2020 WL 7090120, at *19-20 (E.D. Va. Dec. 3, 2020).

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community."  *Carey v. Throwe*, 957 F.3d 468, 475 (4th Cir. 2020).  Acts of fraud, waste, or abuse are matters of concern to any federal agency or mortgage provider, and to the greater community.  It cannot be denied that the challenged statements emanate from a matter of public concern as defined under Virginia case law.  *See, e.g., Liverman v. City of Petersburg*, 844 F.3d 400, 408 (4th Cir. 2016) (making "comments on the operations and policies of the [Police] Department" is "arguably the 'paradigmatic' matter of public concern"); *Rolofson v. Fraser*, 904 S.E.2d 284, 294-95 (Va. 2024) (statements are on matters of public concern when addressed to topics like "'the operations and policies of' an entity or "the inability of the [entity] to carry out its vital public mission effectively," and when their form shows they are "designed 'to reach as broad a public audience as possible,'" "directed to the public," or "in the form 'of a

16

group complaint'"). Plaintiffs have not disputed that the statements at issue here are on matters of public concern. *See* Dkt. 23, at 6. The anti-SLAPP law therefore applies.

**B.      Plaintiffs' failure to plead actual malice in the FAC warrants dismissal.**

Plaintiffs fail to adequately plead actual malice. Virginia state and federal courts have readily dismissed defamation cases at the pleading stage when, as here, a plaintiff failed to plead adequate allegations of fact to support a plausible claim of malice. *See, e.g.*, *Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F. App'x 234, 240 (4th Cir. 2020); *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 595 (E.D. Va. 2020), *aff'd sub nom.* 2 F.4th 286 (4th Cir. 2021).

"[A]t the pleading stage, conclusory allegations and mere recitations of the actual malice standard—which is ultimately a subjective inquiry—are insufficient. Instead, a plaintiff must plead facts that, if proven, create a plausible inference of actual malice." *Fairfax*, 534 F. Supp. 3d at 592; *see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). But plaintiffs offer *no* facts to support their conclusory assertion of actual malice. Plaintiffs offer a blanket assertion that the statements were made "with malice, as Defendants knew of [their] falsity or had a reckless indifference to whether [they were] true, which entitles Plaintiffs to punitive damages." FAC ¶¶ 50(c), 60(c). These allegations merely repeat the definition of actual malice, expressed as a legal conclusion followed by a case citation. *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; nor will "'naked assertion[s]' devoid of 'further factual enhancement'" in a complaint. *Iqbal*, 556 U.S. at 678.

Plaintiffs attempt to remedy this problem in the FAC by including a single, vague allegation that Fannie Mae and Director Pulte made the statements at issue "for ulterior political and personal motives." FAC ¶ 38. But this allegation misses the mark. Because actual malice must "not be confused with the concept of malice as an evil intent or a motive arising from spite

17

or ill will," *Masson v. New Yorker Mag.*, 501 U.S. 496, 510 (1991), "actual malice cannot be inferred from having a political or ideological animus towards a plaintiff, standing alone," *Fairfax*, 534 F. Supp. 3d at 597; *see McCullough v. Gannett, Co.*, 2023 WL 3075940, at *14 (E.D. Va. Apr. 25, 2023) ("[A]llegations of hostility, hatred, extreme bias, and ill-will towards [plaintiff] are irrelevant to actual malice."); *Jackson v. Hartig*, 645 S.E.2d 303, 310 (Va. 2007) (allegations of a "defendant's ill will toward a public figure plaintiff is, without more, insufficient to establish knowledge of falsity or reckless disregard for the truth"). All plaintiffs have left are allegations that "Defendants knew" they "had no evidence of any fraudulent behavior," "misconduct," or "unethical conduct" by any plaintiff. FAC ¶¶ 37-38, 44. But "[t]his kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 378 (holding that allegation that "statements were known by [them] to be false at the time they were made" is too conclusory to plausibly plead actual malice (alteration in original)). Indeed, the materials that plaintiffs have now incorporated into their FAC only reinforce the inference that Fannie Mae terminated certain employees because of concerns about wrongful conduct—thus reinforcing that plaintiffs have *not* plausibly alleged facts demonstrating that the statements were made with a reckless disregard for the truth.

Because plaintiffs have not plausibly pleaded malice, Fannie Mae is "immune from tort liability," if this Court were to reach this issue at all. Va. Code Ann. § 8.01-223.2(A); *Harless v. Nicely*, 900 S.E.2d 503, 511 (Va. Ct. App. 2024).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: March 2, 2026

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Brian P. Quinn*

Meaghan VerGow*
mvergow@omm.com
Brian Quinn (VSB No. 90997)
bquinn@omm.com
1625 Eye Street NW, 10th Floor
Washington, D.C. 20006
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

Leah Godesky*
lgodesky@omm.com
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: +1 212 326 2000
Facsimile: +1 212 326 2061

* admitted *pro hac vice*

*Attorneys for Defendant The Federal
National Mortgage Association*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2026, I caused the foregoing to be

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following email addresses:

Milton C. Johns
mjohns@xlppllc.com
Executive Law Partners, LLC
11130 Fairfax Blvd., Suite 303
Fairfax, VA 22030

Dennis C. Barghaan, Jr.
dennis.barghaan@usdoj.gov
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

/s/ *Brian P. Quinn*

Brian P. Quinn (VSB No. 90997)
bquinn@omm.com
O'Melveny & Myers LLP
1625 Eye Street NW, 10th Floor
Washington, D.C. 20006
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorney for Defendant The Federal
National Mortgage Association*