**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ANIL KANCHARLA, *et al.*,<br><br>        Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>        Defendants. | )<br>)<br>)<br>)<br>) Civil Action No.: 1:25-cv-01540-LMB-IDD<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNITED STATES'**
**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff respectfully submits this Opposition to the United States' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1). The Government argues that the Court lacks subject-matter jurisdiction because the alleged defamation occurred within the scope of the FHFA Director's federal employment, requiring substitution of the United States under the Federal Employees Liability Reform and Tort Compensation Act ("Westfall Act") and dismissal under the Federal Tort Claims Act's defamation exception.

The motion should be denied and the requested certification rejected. The defamatory statements alleged in the Complaint were not within the statutory duties of the Director of the Federal Housing Finance Agency ("FHFA") and were not incidental to those duties. Accordingly, the Government's scope-of-employment theory fails, and the Westfall Act does not apply. Similarly, there is no requirement for administrative exhaustion when the claim falls outside the Federal Tort Claims Act (FTCA).

1

## I. LEGAL STANDARD

The Federal Employees Liability Reform and Tort Compensation Act, referred to as the "Westfall Act" provides federal employees immunity from common-law tort suits only when the alleged conduct occurred within the scope of their office or employment. 28 U.S.C. §2679. The Attorney General may certify scope of employment, resulting in substitution of the United States as defendant.

However, such certification is subject to judicial review, and this Court must determine independently whether the conduct was within the scope of employment. See *Gutierrez de Martinez* v. *Lamagno*, 515 U.S. 417, 420 (1995) ; See also *Osborn v. Haley*, 549 U.S. 225, 230 (2007);  *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009).

Certification constitutes only prima facie evidence and may be rebutted by factual allegations demonstrating that the conduct was outside the employee's duties. *Maron v. United States* 126 F.3d 317, 322 (4th Cir. 1997). If the challenged conduct falls outside the scope of employment, the United States cannot be substituted, and the court retains jurisdiction over the individual defendant.

## II. THE ALLEGED DEFAMATION WAS NOT WITHIN THE FHFA DIRECTOR'S STATUTORY DUTIES

The statutory powers of the FHFA Director arise primarily under the Housing and Economic Recovery Act, which authorizes the Director to regulate and supervise the government-sponsored enterprises, including Fannie Mae and Freddie Mac. The Director's responsibilities include regulatory oversight, rulemaking, conservatorship functions, and supervision of enterprise safety and soundness. 12 U.S.C. §4513; 12 U.S.C. §4617.

Nothing in those statutory duties authorizes the Director to issue public statements personally attacking or defaming individual employees of any government or private entity, much less, specifically, Fannie Mae.

While Plaintiffs do not dispute Defendant's rendering of DC law on scope of employment, Plaintiff differs significantly in the facts as alleged, and distinguishes the case law cited by Defendant. Defendant argues that this Court must consider Director Pulte's personal defamation of employees of Fannie Mae to be "incidental" to the conduct authorized by statue to determine that they are within the scope of his duties. "To qualify as conduct of the kind [an employee] was to perform, [his or her] actions must have either been 'of the same general nature as that authorized' or 'incidental to the conduct authorized.'" *Haddon v. United States*, 68 F.3d 1420, 1424, 314 U.S. App. D.C. 369 (D.C. Cir. 1995) (quoting Restatement (Second) of Agency § 229 (1957)). Conduct is "incidental" so long as it is "foreseeable"—that is, **it must be a "direct outgrowth of the employee's instructions or job assignment**." Id. (quoting *Boykin v. Dist. of Columbia*, 484 A.2d 560, 562 (D.C. 1984)). *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1332. Emphasis added.

Defamation directed at a private individual is not regulatory supervision and does not advance the FHFA's statutory mandate of ensuring the safety and soundness of government-sponsored enterprises. It is not a direct outgrowth of any part of the Director's statutory duties and job assignment. The alleged statements therefore fail the first and most important scope-of-employment factor. As discussed *supra* the statutory authority of the Director of the Federal Housing Finance Agency ("FHFA") is defined by the Housing and Economic Recovery Act and codified at 12 U.S.C. §§ 4511–4513.

Under 12 U.S.C. § 4511, Congress established the FHFA as an independent federal regulator responsible for oversight of the government-sponsored enterprises, including Federal

3

National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac").

Section 4513(a) sets forth the general supervisory responsibilities of the Director, which include:

- overseeing the safety and soundness of the regulated entities;

- ensuring that the enterprises operate in a safe and sound manner;

- ensuring that they comply with applicable laws and regulations; and

- carrying out regulatory and supervisory actions necessary to fulfill the agency's mission.

12 U.S.C. § 4513(b) further authorizes the Director to exercise rulemaking, supervisory, enforcement, and examination powers over the regulated entities.

Nothing in these statutory provisions authorizes the Director to issue personal statements about the reputation or character of individual employees of Fannie Mae, much less to publish defamatory allegations about them. There is also no evidence to glean that it is foreseeable to any of those functions that the Director should make public comment on the character of individual employees of entities under conservatorship of the FHFA. The statements are further outside the scope of employment in that, as alleged in the Amended Complaint, the Plaintiffs were singled out for employment action by Fannie Mae on the basis of their national origin. There can be no government interest in disseminating defamatory statements about individuals that spawn from a mass wrongful termination on the basis of national origin in an agency under conservatorship of FHFA.

The FHFA statutory scheme is directed toward institutional regulation of enterprises, not toward public commentary about private individuals. The alleged defamatory statements therefore

4

fall outside the category of actions the Director was "employed to perform," and were not foreseeable or a direct outgrowth of the employee's instructions or job assignment.

To this end, and to the extent that there is a factual dispute about the scope of Director Pulte's FHFA responsibilities, Plaintiffs in the alternative request that this Court grant limited discovery into the scope of Director Pulte's employment discussed *infra*.

### III. DEFAMATORY STATEMENTS ABOUT A PRIVATE INDIVIDUAL ARE NOT "INCIDENTAL" TO A FEDERAL OFFICIAL'S DUTIES

The Government attempts to characterize the statements as "incidental" to the Director's duties because they appeared in a press release. That argument misstates the governing law.

For conduct to be incidental to employment, it must be "germane to the proper functioning" of the official's responsibilities but also must not be motivated by "external, independent, and personal motive." *Jamison v. Wiley*, 14 F.3d 222, 237 (4th Cir. 1994).

The Director's alleged statements targeted specific individual employees of Fannie Mae, a private corporation in conservatorship, and were not tied to any official regulatory determination, rulemaking, enforcement action, or statutory responsibility. Such statements are not "germane to the functioning" of FHFA and appear to be motivated by personal and political reasons.

Courts reject scope-of-employment arguments when the alleged tort is not connected to the defendant's assigned responsibilities. See, e.g., cases holding that defamatory statements are outside an employee's scope when the statements are unrelated to the employee's job duties or authority to act.

In *Heuton v. Anderson*, 75 F.3d 357, 361 (8th Cir. 1996) the court held that defamatory conduct by a federal employee could fall outside the scope of employment where they were not related to the employee's official responsibilities and appeared motivated by personal interests.

5

The Fourth Circuit has also held that a tort committed while on duty Federal duty, does not fall under Westfall Act protections if it is "wholly from some external, independent, and personal motive on the part of the servant." *Ross v. Bryan*, 309 F.3d 830, 834 (4th Cir. 2002).

These decisions underscore that public commentary attacking the reputation of a private individual—particularly where unrelated to agency action—does not constitute conduct within the scope of federal employment.

## IV. FOURTH CIRCUIT LAW REQUIRES A DIRECT CONNECTION BETWEEN THE ACT AND THE EMPLOYEE'S OFFICIAL DUTIES

Courts determining scope of employment under the Westfall Act apply the respondeat superior law of the state where the conduct occurred. In the Fourth Circuit, courts consistently examine whether the conduct was in furtherance of the employer's business and within the duties the employee was hired to perform.

Perhaps the leading Fourth Circuit authority is *Maron,* 126 F.3d at 322 (4th Cir. 1997), where the court explained that scope-of-employment analysis focuses on whether the challenged conduct was undertaken in furtherance of the employer's business and was "incident to the performance of the duties entrusted to the employee."

Similarly, in *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000) the court held that the Government bears the burden of establishing that the alleged tortious conduct occurred within the scope of employment once the plaintiff presents evidence to the contrary. See also *Maron,* 126 F.3d at 323 (4th Cir. 1997). The Fourth Circuit has emphasized that courts must conduct an independent judicial determination of scope and are not bound by the Government's certification.

6

## V. AT MINIMUM, PLAINTIFF IS ENTITLED TO DISCOVERY ON THE SCOPE-OF-EMPLOYMENT ISSUE

Even if the Court finds the current record insufficient to resolve the factual issue of the scope of Director Pulte's duties, dismissal is still inappropriate.

As discussed *supra* in *Maron* and *Borneman*, Courts routinely permit limited jurisdictional discovery where a plaintiff challenges the Government's scope-of-employment certification.

Here, discovery is particularly warranted for a number of reasons, including, but not necessarily limited to:

- FHFA policies governing public communications;

- Whether the Director had authority to issue statements about individual employees;

- The purpose and preparation of the press release at issue.

Such evidence is directly relevant to whether the conduct was undertaken to serve FHFA's statutory mission or even if it was incidental to FHFA's statutory mission.

## X. THE FTCA ADMINISTRATIVE CLAIM REQUIREMENT DOES NOT BAR THIS ACTION

The Government also argues that Plaintiff's claims must be dismissed because Plaintiff did not first present an administrative claim to the Federal Housing Finance Agency under the Federal Tort Claims Act. That argument fails for two independent reasons.

**A. The FTCA Administrative Claim Requirement Applies Only If the United States Is Properly Substituted as Defendant**

The administrative claim requirement arises under 28 U.S.C. § 2675(a), which provides that a tort claim against the United States cannot be instituted unless the claimant first presents the claim to the appropriate federal agency.

But that requirement applies only to actions brought against the United States under the FTCA.

Here, the Government's argument assumes that substitution under the Westfall Act is proper. As discussed above, however, the alleged defamatory statements were outside the scope of the FHFA Director's statutory duties under 12 U.S.C. §§ 4511–4513. If the Court rejects the Government's scope certification, the United States cannot be substituted as defendant and the administrative notice provisions of the FTCA does not apply.

Accordingly, the Government cannot rely on 28 U.S.C.§2675(a) unless it first establishes that the alleged conduct occurred within the scope of federal employment.

**B. Even If the FTCA Applied, Defamation Claims Are Expressly Excluded From the FTCA's Waiver of Sovereign Immunity**

Even if the United States were substituted as defendant, Plaintiff's claim would still not be governed by the FTCA because Congress expressly excluded claims arising out of defamation from the statute's waiver of sovereign immunity.

Under 28 U.S.C. § 2680(h), the FTCA does not apply to claims arising out of:

- libel

- slander

- misrepresentation

- deceit

8

Because Plaintiff's claim arises from alleged defamatory statements, it falls squarely within this statutory exception. Thus, if the United States were substituted as defendant, the claim would not proceed under the FTCA at all; it would instead be barred by sovereign immunity. The Government therefore cannot rely on the FTCA's administrative claim requirement as a basis for dismissal while simultaneously invoking an FTCA exception that would prevent the claim from ever being brought against the United States.

**C. At Minimum, the Court Should Defer Any Exhaustion Determination Until the Scope-of-Employment Issue Is Resolved**

Because the applicability of the FTCA depends entirely on whether the alleged conduct occurred within the scope of federal employment as discussed at length *supra*, this Court must resolve the scope-of-employment issue first.

## CONCLUSION

Because the defamatory statements alleged in the Complaint were not within the statutory duties of the FHFA Director and were not incidental to those duties, the Government's scope-of-employment argument fails.

Plaintiff respectfully requests that the Court:

1. Deny the Government's Motion to Dismiss;

2. Decline substitution of the United States as defendant; or

3. In the alternative, permit limited discovery on the scope-of-employment issue.

Respectfully submitted,
Plaintiffs


/s/ Milton C. Johns

By: _____

Milton C. Johns, VSB No. 42305
EXECUTIVE LAW PARTNERS, PLLC
11130 Fairfax Boulevard, Suite 303
Fairfax, VA 22030
571-500-1010
571-408-8102 (f)
mjohns@xlppllc.com
*Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I filed the foregoing with the Court's ECF system, which will send electronic notice of the same to all counsel of record.


/s/ Milton C. Johns

_____

Milton C. Johns

10