**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| ANIL KANCHARLA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:25cv1540 |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | (Formerly Fairfax Circuit Court No. |
| | ) | CL2025-11995) |
| Defendants. | ) | |
| _____ | ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
UNITED STATES' MOTION TO DISMISS**

Pursuant to Local Rule 7(F)(1), defendant, the United States of America, through its undersigned counsel, hereby respectfully submits the instant reply memorandum of law in further support of its motion to dismiss in the above-captioned action for a lack of subject matter jurisdiction.

**INTRODUCTION**

In the words of the Supreme Court of the United States, the Federal Housing Finance Agency ("FHFA") and its Director are "tasked with supervising *nearly every aspect* of [Fannie Mae's] *management and operations*." *Collins v. Yellin*, 594 U.S. 220, 230 (2021) (emphasis added). At issue here is whether the Department of Justice's determination that the current FHFA Director's interactions with the media about actions taken by Fannie Mae to curb alleged financial fraud on the agency by its employees is a "natural outgrowth" of that vast charge for purposes of District of Columbia scope law. Simply to ask the question is to provide its answer. Courts have held that federal employees remain within the scope of their employment when speaking with the media about their work – even when the words that they speak are defamatory. Plaintiffs'

opposition memorandum does not attempt to grapple with this authority or with the copious nature of the FHFA Director's statutorily-identified responsibilities.

This Court should affirm the scope certification and dismiss the resulting claims against the United States under the Federal Tort Claims Act.

## ARGUMENT

**I.     DIRECTOR PULTE WAS WELL WITHIN THE SCOPE OF HIS FEDERAL EMPLOYMENT DURING HIS MEDIA INTERACTIONS WITH RESPECT TO FHFA'S SUPERVISION OF FANNIE MAE'S ACTIVITIES**

The primary (and exclusive) question that remains with respect to the United States' motion to dismiss is whether the Justice Department correctly certified that Director Pulte was acting within the scope of his federal employment at the time of the events giving rise to plaintiffs' claims. Under binding authority regarding both the substance of the scope of employment inquiry and the procedural parameters governing plaintiffs' scope challenge, this question must unequivocally be answered in the affirmative.

At the outset, plaintiffs concede that it is the *respondeat superior* law of the District of Columbia that governs the scope inquiry. *Opp. Mem.* (Dkt. No. 43), at 3. Plaintiffs nevertheless argue that they "differ[] significantly in the facts as alleged, and distinguishes the case law cited by" the United States. *Id.* This is a rather curious statement. Not once within the four corners of their opposition memorandum do plaintiffs indicate any "difference" in the "facts as alleged" – nor could they, as the United States's scope inquiry took the facts as plaintiffs themselves pled them in their own complaint. *Mem.* (Dkt. No. 38), at 5-7. And not once within the four corners of their opposition memorandum do plaintiffs even attempt to distinguish the *two* District of Columbia decisions – cited in the United States's opening memorandum – holding that federal employees can remain within the scope of their employment when making statements to the media.

*Id.* at 17-20 (citing *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006) (per curiam); *Wuterich v. Murtha*, 562 F.3d 375, 384-85 (D.C. Cir. 2009)).  These gaps in plaintiffs' opposition memorandum alone speak volumes about the veracity of their scope position.

In any event, it appears that plaintiffs make two principal arguments in support of their scope challenge.  *First*, they argue that none of the "statutory duties" of the FHFA Director include issuing statements to the media about an enforcement action related to putative financial fraud amongst a large group of former Fannie Mae employees.  *Second*, they argue that the allegedly defamatory (or otherwise wrongful) nature of Director Pulte's statements place them outside the scope of employment.  And with respect to procedure, plaintiffs – despite the United States' acceptance of their own factual allegations and plaintiffs' own failure to introduce any evidence whatsoever on the scope question – alternatively ask this Court to allow them to engage in amorphous discovery before definitively ruling on the scope question.  As discussed in greater detail *infra*, none of these positions bear any merit – especially when considered against binding authority on District of Columbia scope law and Westfall Act procedure, and the Director's duties and obligations as a senior official of the United States.

A.     **PRESS STATEMENTS ARE "INCIDENTAL TO" DIRECTOR PULTE'S DUTIES UNDER DISTRICT OF COLUMBIA SCOPE LAW**

Plaintiffs first maintain that "[n]othing in the statutory provisions" identifying the FHFA Director's responsibilities authorized Director Pulte to issue a press release (or otherwise speak with media representatives) to announce efforts taken to eliminate alleged fraud at Fannie Mae; namely, the termination of employees who allegedly engaged in financial fraud against Fannie Mae.  *Opp. Mem.*, at 3-5.  In this respect, plaintiffs maintain that these press communications were simply "not 'germane to the functioning' of FHFA," were "not a direct outgrowth of any part of the [FHFA] Director's statutory duties and job assignment," and (ostensibly in their own personal

view) "do[] not advance the FHFA's statutory mandate of ensuring the safety and soundness of government-sponsored enterprises." *Id.* at 3. Plaintiffs' position is doubly myopic – it relies, largely in conclusory fashion, on an overly-narrow assessment of *both* District of Columbia scope of employment law and the responsibilities of FHFA and its Director. Either of these problems alone requires the rejection of their position and the affirmance of the Justice Department's scope certification.

1.      Plaintiffs' opposition memorandum is largely devoid of any meaningful analysis of District of Columbia scope authority. To quickly reiterate the parameters of the applicable scope law here, *Mem.*, at 14-15, the District employs the scope of employment standard articulated in the Restatement (Second) of Agency, *see Wuterich*, 562 F.3d at 383, which provides as follows, in pertinent part:

> Conduct of a servant is within the scope of employment if, but only if:
>
> (a) It is of the kind he is employed to perform;
>
> (b) It occurs substantially within the authorized time and space limits [of the employment];
>
> (c) It is actuated, at least in part, by a purpose to serve the master; and
>
> (d) If force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT (SECOND) OF AGENCY § 228(1) (1958). On the first prong – whether the act in question is "of the kind" that the employee "is employed to perform" – District of Columbia courts have held that the employee's "actions must have either been of the same general nature as that authorized or *incidental* to the conduct authorized." *Ballenger*, 444 F.3d at 664 (emphasis in original). And "conduct is 'incidental' so long as it is 'foreseeable,' and it is 'foreseeable' if it is a 'direct outgrowth of the employee's instructions or job assignment.'" *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1332 (D.C. Cir. 2014).

Plaintiffs also avoid any discussion (indeed, any citation) of the numerous decisions that the United States cited to support that federal employees' interactions with the press – even when clearly unauthorized by their agencies' policies – remain within the scope of their employment. These citations from the United States included *two* decisions from the District of Columbia holding that high-level federal officials act within the scope of their employment when they allegedly defame "private" individuals or entities while interacting with the press. *See Ballenger*, 444 F.3d 659, 664; *Wuterich*, 562 F.3d at 384-85.[1]   And courts across the country have held similarly. *See Aversa v. United States*, 99 F.3d 1200, 1210-13 (1st Cir. 1996); *see also Bello v. United States*, 93 Fed. Appx. 288, 290-91 (2d Cir. 2004) (per curiam); *Mac Isaac v. Cable News Net., Inc.*, 2023 WL 6847101, at *5 (D. Del. Oct. 17, 2023); *Barry v. Whelan*, 796 F. Supp. 885, 891-92 (E.D. Va. 1992).   In each of these cases, a federal employee made a statement to the media about the actions or character of a "private" individual or entity – in most instances, accusing them of misconduct – and yet they remained within the scope of their employment because those statements concerned the nature of their work.   Put simply, an employee's discussion of the work performed by their particular agency with the media, even if unauthorized, can be a foreseeable "direct outgrowth" of the employee's duties.

Plaintiffs' inability to engage with this authority – let alone articulate a rationale for why it is either wrong or inapplicable here – is telling.

---

[1]To be sure, the District of Columbia Court of Appeals has held that *Ballenger* cannot be read to hold that *every single* interaction between elected officials and the press will remain within the scope of an employee's employment. *See Trump v. Carroll*, 292 A.3d 220, 239-40 (D.C. 2023) ("[W]e decline to adopt a categorical rule of *Ballenger* that would hold that the conduct of elected officials speaking to the press is always within the scope of that employment.").   But that is not the United States' position here, and such an expansive reading of District scope law is certainly unnecessary to sustain the scope certification here.   If, for instance, the allegations here were that Director Pulte spoke to the press about a recent narcotics-related indictment or an investigation into a plane crash, the lack of connection to the work of FHFA and his role as Director of the same would make it much more difficult to demonstrate the necessary nexus.

**2.**      This brings us to the specific responsibilities of the FHFA Director, which is ostensibly the main thrust of plaintiffs' scope challenge; namely, that those responsibilities somehow do not include announcement of actions taken to ameliorate putative fraud on Fannie Mae by its employees.   And on this score, it bears reiterating once again: to be within the scope of employment, the act in question need not be expressly listed as amongst the employee's authorized duties and responsibilities; all that is necessary is that it be a "direct outgrowth" of those duties. *Allaithi*, 753 F.3d at 1330; *see also Trump*, 292 A.3d at 232 (requiring "some relationship or nexus between the tortious conduct and the employee's responsibilities for it to be an outgrowth of a job-related controversy").

This question is not difficult to answer.  As the Supreme Court itself has noted, it is difficult to overstate the extent of the FHFA Director's authority; indeed, even without considering its role as Fannie Mae's conservator, FHFA – and its Director – are "tasked with supervising *nearly every aspect* of [Fannie Mae's] *management and operations.*"  *Collins v. Yellin*, 594 U.S. 220, 230 (2021) (emphasis added).  The Housing and Economic Recovery Act of 2008, Pub. L. 110-289, 122 Stat. 2654 (July 30, 2008), the statute that created FHFA, confirms the veracity of the Supreme Court's expansive statement.  It provides as follows, in pertinent part:

(a)(1)   The principal duties of the Director shall be –

    (A)   to oversee the prudential operations of each regulated entity [*e.g.*, Fannie Mae];

    (B)   to ensure that –

        (i)   each regulated agency operates in a safe and sound manner . . .

        . . . .

        (iii)   each regulated entity complies with this chapter and the rules, regulations, guidelines and orders issued under this chapter;

. . . .

> (v)    the activities of each regulated entity and the manner in which such regulated entity is operated are consistent with the public interest.

12 U.S.C. § 4513(a)(1).  There can be little doubt that monitoring efforts to root out putative fraud on the finances of Fannie Mae – whether on the part of its own employees or otherwise – constitutes part of "oversee[ing] the prudential operations" of Fannie Mae, as well as "ensur[ing]" both "that [Fannie Mae] operates in a safe and sound manner" and that "the manner in which [Fannie Mae] is operated [is] consistent with the public interest."  As such, plaintiffs' statement that Director Pulte's press interactions on these subjects "w[]ere unrelated to agency action," *Opp. Mem.*, at 6, makes little sense.[2]

And from this axiomatic understanding, the above authority teaches that the Director's interactions with the media to announce these efforts remain within the scope of his employment. *See Aversa*, 99 F.3d at 1212 ("Walsh made the alleged statements [to the press] as a means, albeit tortious and contrary to his employer's policies and rules, of accomplishing the Justice Department's objective of informing the public of recent law enforcement efforts.").  Regardless, Director Pulte's interactions were *not* contrary to FHFA policy; rather, as the United States explained in its opening memorandum, *Mem.*, at 19-20, the specific interactions here are unquestionably an implicit part of what the head of a federal agency is expected to do.

Put simply, plaintiffs' attempt to cabin the duties and responsibilities of the FHFA Director to "institutional regulation of enterprises," *Opp. Mem.*, at 4, runs afoul of the actual statutory language discussed above.  And the Supreme Court's definitive construction of the same, and, far

---

[2]And this does not even include the scope of FHFA's role as Fannie Mae's conservator, which adds broad authority to FHFA (and by extension, its Director) over the business operations of Fannie Mae.  Indeed, the Sixth Circuit has explained that the statute "grants FHFA far-reaching powers to direct [Fannie Mae's] business and to act on [Fannie Mae's] behalf as conservator." *Robinson v. Fed. Housing Fin. Agency*, 876 F.3d 220, 231 (6th Cir. 2017).

more importantly, in the words of the District of Columbia Circuit, it is "far too cramped" an understanding of District scope law. *Ballenger*, 444 F.3d at 665.

3.        Finally, a brief mention of plaintiffs' half-hearted attempt to suggest that Director Pulte's press statements and interactions on the third prong of the scope framework – *i.e.*, whether the conduct in question was "actuated, even in part, to serve the master."  Plaintiffs, in purely conclusory fashion, suggest that Director Pulte's press interactions "appear to be motivated by personal and political reasons." *Opp. Mem.*, at 5.  But plaintiffs' mere *ipse dixit* falls far short of the type of evidence that is needed to overturn a Westfall Act scope certification and abrogate a federal employee's absolute immunity. *See, e.g.*, *Guiterrez*, 111 F.3d at 1155.  Far to the contrary, "even a *partial* desire to serve the master is sufficient," *Ballenger*, 444 F.3d at 665, and the connection between Fannie Mae's actions and FHFA's statutory charge more than satisfies this minimal hurdle, *see Trump*, 292 A.3d at 236 (holding that "a personal purpose could be the employee's predominant purpose").

### B.        DEFAMATORY OR OTHERWISE WRONGFUL STATEMENTS REMAIN WITHIN THE SCOPE OF EMPLOYMENT UNDER DISTRICT OF COLUMBIA LAW

Perhaps recognizing the extraordinary breadth of both District of Columbia scope law (including the decisional authority applying the same to circumstances virtually identical to those alleged here) and the federal statutes elucidating the powers of FHFA and its Director, plaintiffs repeatedly pivot to their position that the allegedly defamatory[3] or otherwise wrongful nature of Director Pulte's statements take him outside the scope of his federal employment. *Opp. Mem.*, at 5 (entitling a full section of the opposition memorandum as "Defamatory Statements About a Private Individual Are Not Incidental to a Federal Official's Duties"); *see also id.* at 4 (arguing

---

[3]In providing this retort to plaintiffs' erroneous position, the United States in no way concedes that Director Pulte's statements were at all false (and thus defamatory) or otherwise wrongful.

that the FHFA Director is not authorized to . . . publish defamatory allegations about" plaintiffs); *id.* ("The statements are further outside the scope of employment in that . . . the plaintiffs were singled out for employment action by Fannie Mae on the basis of their national origin."). But in pressing this argument, plaintiffs completely ignore the extensive decisional authority that the United States presented in its opening memorandum that such considerations are completely irrelevant to the scope inquiry. *Mem.*, at 15-17.

Plaintiffs understandably ignore the extensive authority – including from *this Court* – that the United States cited for this proposition. Courts have universally recognized that the allegedly-tortious or wrongful nature of a particular act is inconsequential to whether that act is in the scope of employment. These courts, importantly, include those in the District of Columbia; indeed, the District of Columbia Circuit has held that "District law requires that we focus on the type of act [the employee] took that allegedly gave rise to the tort, not the wrongful character of that act." *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013); *see also Ballenger*, 444 F.3d at 664 ("The proper inquiry in this case focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." (quotation marks omitted)). And this makes sense – whether asserted against private corporations or the United States, all tort claims allege that the employees of these entities engaged in wrongful conduct; if allegations of wrongful conduct were sufficient to take employees out of the scope of their employment, there would be no need for either *respondeat superior* liability *or* Westfall Act immunity. *See, e.g.*, *Johnson v. Carter*, 983 F.2d 1316, 1323 (4th Cir. 1993) (quoting *Wallen v. Domm*, 700 F.2d 124, 126 (4th Cir. 1983)), *rev'd on other grounds by Guiterrez*, 515 U.S. at 436-37.

Plaintiffs do not provide any meaningful analysis of this authority in their opposition memorandum; in fact, quite to the contrary, they do not cite even one of these cases. Nor do they cite any decision of their own to support this position. Instead, plaintiffs rely simply on conclusory statements to ask this Court to hold that Director Pulte could not possibly remain within the scope of his employment if his statements were defamatory or otherwise wrongful. This Court should decline plaintiff's invitation to ignore decades of decisional authority.

C.      THERE IS NO BASIS FOR THIS COURT TO AUTHORIZE WHAT PLAINTIFFS CALL "LIMITED DISCOVERY"

Finally, plaintiffs ask this Court to authorize them to engage in "limited jurisdictional discovery" on the scope of employment issue. *Opp. Mem.*, at 7. But as the Fourth Circuit has held, no discovery is appropriate – and in fact, discovery is *prohibited* given the implications for the absolute immunity Director Pulte enjoys under the Westfall Act – unless "the certification, the pleadings, the affidavits, and any supporting supplementary evidence . . . reveal an issue of material fact." *Guiterrez*, 111 F.3d at 1155; *see also Osborn*, 549 U.S. at 252. Plaintiffs have not introduced *any* evidence whatsoever on the scope question, let alone evidence that has suggested the existence of any genuine issue of material fact here, much less one of the type necessary to broach the subject of discovery. Indeed, plaintiffs do not even identify a factual dispute,[4] and simply rely upon the allegations of their amended complaint (despite not citing it once in their opposition memorandum). *See Wuterich*, 562 F.3d at 386 (holding that "there is no right to even 'limited discovery' unless a plaintiff has made allegations" – *i.e.*, through the complaint – "sufficient to

---

[4]In fact, plaintiffs' *own opposition memorandum* is equivocal on the subject. *Opp. Mem.*, at 5 ("[T]o the extent that there is a factual dispute about the scope of Director Pulte's FHFA responsibilities.").

rebut the Government's certification"); *see also Giordano v. Hohns*, 714 F. Supp. 3d 564, 580 (E.D. Pa. 2024).

In the end, this is a *legal* question: was Director Pulte acting within the scope of his federal employment when he issued the News Release from FHFA's website and/or spoke with a media representative about FHFA's oversight of Fannie Mae's operations, in which he was identified as FHFA's Director?  No discovery is necessary to answer that question, especially insofar as Director Pulte's statements are a part of plaintiffs' complaint,[5] and this Court should not abrogate Director Pulte's absolute immunity from suit to provide it.  This is especially true given the conclusory nature of both the "limited jurisdictional discovery" that plaintiffs seek and their explanation of the "evidence" that such discovery would yield.  Among other requests that are left unstated, plaintiffs' report that they wish to obtain certain information about, *inter alia*, "FHFA policies governing public communications" and "[w]hether the Director had authority to issue statements about individual [Fannie Mae] employees." *Opp. Mem.*, at 7.  But more significantly, plaintiffs simply state that this material "is directly relevant to whether the conduct was undertaken to serve FHFA's statutory mission or even if it was incidental to FHFA's statutory mission." *Id.*

The mere fact that the alleged conduct undertaken by an employee is "unauthorized" does not remove it from the scope of employment; thus, leaving aside the additional analysis of the scope issue above, this information is not relevant to the scope inquiry.  In any event, plaintiff

---

[5]This is what distinguishes *Heuton v. Anderson*, 75 F.3d 357 (8th Cir. 1996), cited in plaintiffs' opposition memorandum, *Opp. Mem.*, at 5-6.  In *Heuton*, a United States Department of Agriculture supervisors of meat inspectors "allegedly posted a picture depicting [plaintiff] as a momma pig and the other plaintiffs as suckling piglets." *Heuton*, 75 F.3d at 359.  The Eighth Circuit – in *reversing* a district court's rejection of a Westfall Act scope certification – held that the picture could be within the scope of the supervisor's employment, but that because it was not obvious from the picture whether it related to an entirely personal dispute or was an awkward attempt at workplace discipline, further proceedings were needed. *See id.* at 361.  That is not the case here – the connection between the press statements and Director Pulte's supervisory responsibilities over Fannie Mae is obvious.

simply cannot pierce the significant protections afforded federal employees through Westfall Act absolute immunity with open-ended and vague requests – such as those cursorily presented in plaintiffs' opposition memorandum. *See, e.g.*, *Wuterich*, 562 F.3d at 386 (rejecting request for discovery in Westfall Act scope certification context where "discovery demands appear[ed] to be nothing more than a fishing expedition for facts that *might* give rise to a viable scope-of-employment claim" (emphasis in original)).

II.     THE UNITED STATES HAS RETAINED ITS SOVEREIGN IMMUNITY FROM SUIT WITH RESPECT TO PLAINTIFFS' CLAIMS

If this Court affirms the Justice Department's scope certification here – as the law provides that it should – this Court must dismiss the currently-pending Federal Tort Claims Act claims against the United States, at least because of plaintiffs' failure to present an administrative claim to FHFA prior to commencing this litigation. *Mem.*, at 22-24 (discussing 28 U.S.C. § 2675(a)). Indeed, plaintiffs concede this in their opposition memorandum, and nowhere do they allege – let alone demonstrate – that they previously presented an administrative claim to FHFA as required by federal statute. *Opp. Mem.*, at 8 ("If the Court rejects the Government's scope certification . . . the administrative notice provisions of the FTCA does [sic] not apply."). There is thus no need for extensive discussion of this issue here.[6]

---

[6]As provided in its opening memorandum, the United States also sought dismissal of plaintiffs' FTCA claims through application of the so-called "intentional torts proviso," codified at 28 U.S.C. § 2680(h), because plaintiffs' claims are for defamation. *Mem.*, at 24-25. Plaintiffs response to this argument – though ultimately immaterial given their concession on the issue of administrative presentation – is difficult to understand. In this regard, plaintiffs posit that the United States "cannot rely on the FTCA's administrative claim requirement as a basis for dismissal while simultaneously invoking an FTCA exception that would prevent the claim from ever being brought against the United States." *Opp. Mem.*, at 25. But that is the exact point – as the United States explicitly provided in its opening memorandum, it identified the "intentional tort proviso" bar in order to prevent plaintiffs from "expend[ing] the time and resources to generate and file an administrative claim with FHFA for the claims presented in their present complaint because this Court would lack subject matter jurisdiction over those claims" regardless. *Mem.*, at 24. In any event, these are independent bases for which the United States has retained its sovereign immunity,

## **CONCLUSION**

For the foregoing reasons, this Court should sustain the Justice Department's scope

certification and dismiss plaintiffs' resulting claims against the United States under the FTCA.


Respectfully submitted,

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

By:        _____/s/_____
DENNIS C. BARGHAAN, JR.
Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax:        (703) 299-3983
Email:  dennis.barghaan@usdoj.gov

DATE: March 26, 2026                    ATTORNEYS FOR THE UNITED STATES

---

and both can apply to preclude a claim, as courts have recognized.  *See, e.g.*, *Jones v. Seiling*, 2020 WL 877980, at *2 (E.D. Va. Feb. 21, 2020).

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing ("NEF") to the following:

Milton C. Johns
Executive Law Partners, PLLC
11130 Fairfax Boulevard, Suite 303
Fairfax, Virginia  22030
Email:  mjohns@xlppllc.com

Brian Patrick Quinn
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, DC 20006-4001
Email: bquinn@omm.com

Date: March 26, 2026                    _____/s/_____
                                        DENNIS C. BARGHAAN, JR.
                                        Chief, Civil Division
                                        Assistant U.S. Attorney
                                        2100 Jamieson Avenue
                                        Alexandria, Virginia 22314
                                        Telephone: (703) 299-3891
                                        Fax:         (703) 299-3983
                                        Email:  dennis.barghaan@usdoj.gov

                                        ATTORNEYS FOR THE UNITED STATES